RAYMOND WILHELM ET AL. *v.* PETER S. CZUCZKA
(7096)

SPALLONE, O'CONNELL and FOTI, Js.

Argued March 14—decision released July 4, 1989

*Jan A. Marcus,* for the appellants (plaintiffs).

*Edward Maum Sheehy,* for the appellee (defendant).

O'CONNELL, J. The minor plaintiff brought this medical malpractice action, through her parents as next friends, alleging permanent ear damage. In the first count of a two count complaint, the minor plaintiff claimed damages for injuries she sustained while under the defendant's professional care. In the second count, the child's parents sought recovery for expenses incurred as a result of the defendant's alleged malpractice. The jury returned a verdict in favor of the defendant and the trial court denied the plaintiffs' motion to set aside that verdict.

The plaintiffs claim that the trial court erred (1) in instructing the jury to the effect that the testimony of the minor plaintiff could be disregarded because she is a child, (2) in failing to grant the plaintiffs' motions for mistrial following colloquys with the court, (3) in permitting the defendant to interrupt the plaintiffs' case-in-chief by reading a portion of a deposition transcript, (4) in permitting defense counsel to read a portion of the deposition testimony of a medical expert as to the standard of care in the medical profession without laying a proper foundation, (5) in overruling the plaintiffs' objection to the introduction of opinion testimony of a medical expert who was not disclosed by the defendant as a medical expert expected to be called as a witness, (6) in inaccurately stating facts to the jury in response to its question concerning inferences and proximate cause, (7) in instructing the jury that a failure to refer to an expert could not cause the minor

plaintiff's ultimate condition and, (8) in recharging the jury on the standard of care. We find no error.

The jury could reasonably have found the following facts. The defendant is a board certified pediatrician licensed to practice medicine in this state. The minor plaintiff was a patient of the defendant from her birth on February 21, 1978, until September, 1980. During this period, the defendant treated her on several occasions for infections of the right ear. On October 4, 1980, the minor plaintiff was seen by Edward Gaynor, an ear, nose and throat specialist, for a second opinion. She was taken to him by her parents; the defendant had not referred her to him.

Expert medical witnesses in the field of pediatrics and pediatric otolaryngology testified that, at the time in question, the standard of care for pediatricians did not require a pediatrician to refer a child with problems like those of the minor plaintiff to an ear, nose and throat specialist. Moreover, the defendant's treatment of the minor plaintiff's ear condition was in accordance with the standard of care and practice for pediatricians.

I

At the time of trial, the minor plaintiff was ten years old. Prior to administering the oath, the court inquired of her and determined that she possessed sufficient testimonial competency to be accepted as a witness. Such a determination is discretionary and will not be disturbed, absent a showing of manifest abuse of discretion. *State* v. *Maldonado,* 13 Conn. App. 368, 376, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988).

The plaintiffs do not quarrel with this competency determination; rather, they claim that it was error for the court to instruct the jury that as a young child the

minor plaintiff would be "more amenable to any influence or suggestion which may be made to [her] by older persons and particularly by persons closely related to her. A child's imagination often misleads [her] and may, to [her], take on all semblances of actual fact and [she] will relate them as such. The sanctity of oath and the solemnity of legal proceedings may appeal to [her] less than to an adult."[1]

The plaintiffs argue that once the trial court accepted the child as a competent witness, it should not have instructed the jury to weigh her testimony by any standard different from that used for other witnesses. We disagree. General Statutes § 54-86h[2] makes it clear that the weight to be given to the testimony of a child witness and the credibility of the child witness is within the province of the jury.

Where a witness' testimony may implicate considerations not true of witnesses in general it has long been the practice of our trial judges to point out these special considerations to the jury to assist in its deliberations. For example, it is common to point out special matters that they may take into consideration in weighing the testimony of police officers, expert witnesses, parties to the action, or coconspirators. See, e.g., 1 and 2 D. Wright, Connecticut Jury Instructions (3d Ed.).

Here, the trial court expressly instructed the jury that it was the sole judge of the credibility of all witnesses and that any comments that the court made as to the weight, significance of the evidence, or inferences to be drawn therefrom, were merely suggestive for the jury to approve or disapprove in the exercise of its

---

[1] This portion of the charge was taken from 2 D. Wright, Connecticut Jury Instructions (2d. Ed.) § 643 (credibility of witnesses—child).

[2] "[General Statutes] § 54-86h. COMPETENCY OF CHILD AS WITNESS. No witness shall be automatically adjudged incompetent to testify because of age . . . . The weight to be given the evidence and the credibility shall be for the determination of the trier of the fact."

sound judgment. See *State* v. *Smith,* 201 Conn. 659, 666–67, 519 A.2d 26 (1986). Thus, it did not err in charging the jury on the credibility of the minor plaintiff's testimony.

## II

During the course of the trial, the plaintiffs made two motions for mistrial arising out of oral exchanges in front of the jury between the plaintiffs' counsel and the court. Both motions were denied.

The trial court is vested with great discretion in matters occurring during the trial. We will interfere only when it has been demonstrated that the trial court abused that discretion to the manifest injury to the litigant. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 322, 430 A.2d 1 (1980); *State* v. *Messier,* 16 Conn. App. 455, 471, 549 A.2d 270 (1988).

If we had the benefit of a film containing the sights and sounds of the trial we could more effectively evaluate the flavor of the conduct of which the plaintiffs complain. We are limited, however, to the cold words of the printed record. Of necessity, therefore, we must weigh the words in the record against the opinion of the trial judge who was in a position to sense the atmosphere of the trial and appreciate the effect that the offending remarks had upon the jury. *Pisel* v. *Stamford Hospital,* supra. Having examined the record before us, we cannot say that the trial court abused its discretion in denying the two motions for mistrial.

## III

As part of pretrial discovery, the plaintiffs deposed Gaynor, the ear, nose and throat specialist who had treated and performed surgery on the minor plaintiff. As part of their case-in-chief, the plaintiffs read portions of Gaynor's deposition into the record. They intentionally omitted reading about ten pages of the

deposition. The defendant objected to that omission. The trial court ruled that the plaintiffs could omit these pages but that the defendant could read the omitted portions as if they were part of his cross-examination. At the conclusion of the plaintiffs' reading, the defendant read the omitted pages to the jury. The plaintiffs claim that the court's ruling interrupted its case-in-chief and permitted the defendant to present evidence out of turn. We do not agree.

It is elementary that cross-examination of a witness immediately follows direct examination of that witness. 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed.) § 9. The trial court enjoys wide discretion in determining the order in which evidence shall be received. *State* v. *Wood,* 208 Conn. 125, 130, 545 A.2d 1026 (1988); *State* v. *DelVecchio,* 191 Conn. 412, 427, 464 A.2d 813 (1983).

Moreover, no case has been brought to our attention, nor are we aware of one, that has disallowed cross-examination at the conclusion of a witness' testimony, to say nothing of postponing it until the conclusion of the opponent's case-in-chief. Had the plaintiffs offered Gaynor's testimony by calling him to the witness stand in person, rather than by reading his deposition, it would have been unthinkable to deprive the defendant of his right of cross-examination immediately following his testimony. That result cannot be avoided through the device of offering the doctor's testimony via a deposition reading. To hold otherwise would make trial through deposition more valuable than production of witnesses in person. We cannot sanction such a procedure.

The court did not err in allowing the defendant to read the omitted portion of Gaynor's deposition at the conclusion of the plaintiffs' reading of another portion thereof.

## IV

The plaintiffs also claim that the trial court erred in allowing the defendant to read the omitted portion of Gaynor's testimony into evidence, arguing that the necessary foundation had not been laid to ask a hypothetical question. The record, however, does not disclose that the defendant propounded a hypothetical question to the doctor. The testimony of Gaynor that the defendant read into the record was of a general nature. The expert opinion of a witness may properly be based upon his personal knowledge of the subject matter without resort to a hypothetical question. *State v. Conroy,* 194 Conn. 623, 629, 484 A.2d 448 (1984); *Donch v. Kardos,* 149 Conn. 196, 201, 177 A.2d 801 (1962). B. Holden & J. Daly, Connecticut Evidence (2d Ed.) § 118b; 2 J. Wigmore, Evidence (3d Ed.) § 675. Hence, the court did not err in failing to find that the defendant had not established a proper foundation for Gaynor's deposition.

## V

The plaintiffs next argue that allowing the defendant to read the contested portion of Gaynor's testimony also violated Practice Book § 220 (D).[3] That rule requires that, within 120 days from the day a case is claimed for the trial list, a party must disclose the name of any expert witness whom he intends to call, together with a certain information pertinent to the anticipated testimony of the witness.

---

[3] Practice Book § 220 (D) provides that "[e]ach defendant shall disclose the names of his or her experts in like manner within 120 days from the date the case is claimed to a trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

This claim has no merit for any of four reasons: (1) the plaintiffs have furnished us with no authority that cross-examination of a witness, expert or otherwise, is the equivalent of *calling* that person as a witness; (2) the defendant did not read Gaynor's testimony as the examination of an expert, but as the examination or cross-examination of a subsequent treating physician, and, hence, § 220 (D) does not apply (see part III, supra); (3) when the plaintiffs called Gaynor, through his deposition, as an expert, they took the risk that other relevant and competent evidence contained in the deposition might be offered by the defendant; see *Enterprise Leasing Corporation* v. *Dixon,* 1 Conn. App. 496, 500, 472 A.2d 1300 (1984); and (4) Practice Book § 220 (D) expressly allows admission of testimony of an undisclosed expert in the discretion of the court for good cause shown. Under the circumstances of this case, where the plaintiffs had already read a portion of the deposition, we do not find that the trial court abused its discretion in allowing the reading of another part of the deposition of the witness. See *Corosa Realty* v. *Covenant Ins. Co.,* 16 Conn. App. 684, 687–89, 548 A.2d 473 (1988).

## VI

The plaintiffs' final three claims all pertain to a question the jury sent to the court and the court's recharge to the jury in response thereto. Some firmly rooted principles concerning appellate review of jury instructions are dispositive of these claims. An instruction is considered from the standpoint of its effect on the jury in guiding it to a verdict. *State* v. *Timmons,* 7 Conn. App. 457, 464, 509 A.2d 64 (1986). The instruction will be read as a whole with individual instructions not judged in artificial isolation from the overall charge. *State* v. *Phillips,* 17 Conn. App. 391, 394, 552 A.2d 837 (1989). The main and supplemental charge will be examined together to determine whether the jury could rea-

sonably have been mislead by an allegedly erroneous supplemental charge. *State* v. *Williams,* 199 Conn. 30, 41, 505 A.2d 699 (1986). A charge will not be examined under a legal microscope for technical flaws or possible inaccuracies. *State* v. *Phillips,* supra.

Applying these principles, we conclude that the court's recharge to the jury was an adequate response to the jury's question and was a proper statement of the law.

There is no error.

In this opinion the other judges concurred.