## STATE OF CONNECTICUT *v.* EDWARD A. OWEN
## (13341)

O'Connell, Landau and Hennessy, Js.

Argued October 2, 1995—decision released January 16, 1996

*Thomas J. Rechen,* special public defender, for the appellant (defendant).

*Jo Anne Sulik,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *John H. Malone,* supervisory assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant, Edward A. Owen, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes § 53-21. The court imposed a total effective sentence of twenty years, execution suspended after ten years, and probation for a period of five years.

The defendant claims that the trial court improperly (1) refused to charge the jury on (a) the timeliness of the child's complaint, (b) the credibility of a child witness and (c) the failure of the state to call the child's

therapist as a witness, (2) refused to grant a mistrial based on the state's improper characterization of two of its witnesses as experts, (3) failed to grant an acquittal on the sexual assault in the first degree count because there was insufficient evidence to find that the offense was committed on or after the effective date of the statute, October 1, 1989, and (4) admitted constancy of accusation testimony. We affirm the judgment of conviction of sexual assault in the second degree and risk of injury to a child and reverse the conviction of sexual assault in the first degree.

On the basis of the victim's testimony, the jury reasonably could have found the following facts. The victim was born October 20, 1979, and the alleged acts took place on various dates between January 21, 1988, and late 1989. The victim was fourteen years of age at the time of trial. During the period of time when the acts occurred, she resided in an apartment with her mother and the defendant. After the victim's mother arrived at work in the morning, she would call the victim to ensure that she was preparing for school and to request that she awaken the defendant. On many occasions, when the victim woke the defendant, he would grab her hand and make her touch his penis. On one occasion the defendant grabbed the victim's head and forced his penis into her mouth. The defendant on other occasions requested or paid the victim to dress in leotards and then wrestled with her on a bed or couch touching her breasts as they wrestled.

The last incident of improper conduct, referred to during trial as the "couch incident," allegedly took place on or after October 1, 1989. The victim testified that during that incident the defendant touched the victim's breast with his penis, pushed her down on the couch, removed her pants and touched her vagina with his tongue. This last incident, referred to in the information

as cunnilingus, forms the basis for the sexual assault in the first degree conviction.

## I

### A

The defendant contends that the court improperly refused to instruct the jury that it may draw a negative inference from the victim's failure to report the incidents of sexual abuse immediately. The incidents complained of allegedly took place during 1988 and 1989. Approximately six months after the last incident, the victim told her mother that the defendant had touched her improperly. It was not until late 1992, however, that the victim told a number of other people the details and extent of the abuse that had taken place during 1988 and 1989. The defendant argues that the long delay in reporting the abuse so weakened the victim's credibility that it required an instruction. The defendant requested the following instruction: "However, there has also been some evidence that the complainant did not make any complaint at the time of the alleged incident. You may consider the failure to make a timely complaint as bearing upon the credibility of the witness' later complaint and testimony in court, unless this failure has been satisfactorily explained."

The court instead gave a constancy of accusation instruction to the jury urging them to "carefully consider all of the circumstances under which the statements were made and particularly . . . whether what she says has been constant and consistent." Additionally, the jury had the opportunity to listen to and to observe the victim's testimony about the allegations on both direct and cross-examination. This testimony made them aware of the length of time between the alleged offenses and the reporting of them to family and authorities.

The defendant offers no authority, nor can we find any, that requires the court to instruct the jury that the failure of the victim to make a timely complaint requires a satisfactory explanation of the delay in order to leave intact the credibility of the victim. Our Supreme Court has clearly stated that the evaluation of the timing of a victim's statements should be left in the hands of the jury. *State* v. *Parris*, 219 Conn. 283, 292, 592 A.2d 943 (1991). The jury had before them the testimony of the victim and the witnesses as well as the court's instructions that the weight of the evidence and the credibility of the witnesses was for them to determine. Therefore, we conclude that the trial court did not improperly refuse to charge them as requested on the victim's failure to report promptly.

## B

The defendant next claims that the court abused its discretion by refusing to charge the jury on the credibility of a child witness. The defendant requested the following charge: "In weighing the testimony of a child, you should take into consideration his youth. A young child may be more apt to err than an older person or may be amenable to any influence or suggestion which may be made to him by older persons and particularly persons closely related to him. His imagination may mislead him; its products may, to him, take on all the semblances of actual fact and he will relate them as such. The sanctity of the oath and the solemnity of legal proceedings may appeal to him less than to an adult. Perhaps these suggestions are sufficient to indicate to you that in weighing the testimony of a child, his very youth is a factor you should not overlook."

The defendant's contention that the court in *Wilhelm* v. *Czuczka*, 19 Conn. App. 36, 561 A.2d 146 (1989), upheld a jury instruction almost identical to that requested in this case is unavailing. In *Wilhelm*, the

court upheld the instruction on the ground that it was not an abuse of discretion to so instruct in that case. Id., 40.

" 'The prevailing view . . . is that a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness, and, if so, the nature of that instruction.' " *State* v. *James*, 211 Conn. 555, 567–68, 560 A.2d 426 (1989). The victim-witness in this case was eight or nine years of age when the offenses took place and fourteen years of age at the time of trial. We do not find that the court abused its discretion in not giving the requested instruction.

### C

The defendant further contends that the court improperly failed to instruct the jury on the failure of the state to call the victim's therapist, Maureen Bond, to testify. The gravamen of the defendant's argument is that a new trial is required because the court improperly failed to give a *Secondino*[1] instruction and did not allow the defendant to argue the *Secondino* rule and its application to the jury. We disagree.

The following additional facts are relevant to this issue. Bond was present when the victim told Officer Steven A. Cybulski, a youth officer with the Enfield police department, and Ann Tuller, a social worker with the department of children and families, about the incidents of sexual abuse. Both Cybulski and Tuller gave testimony concerning the details of abuse that had been related to them by the victim. The jury also heard testimony from the victim's cousin, Desiree Sevarino and Sevarino's mother, Roxanne Paradise, that the victim had told them about the defendant's improper conduct.

---

[1] *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960).

"It is an ancient maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted. . . . 'The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' . . . There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce." (Citations omitted.) *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 674–75, 165 A.2d 598 (1960). This rule is also applicable to criminal cases. *State* v. *Annunziato*, 169 Conn. 517, 537, 363 A.2d 1011 (1975). To satisfy the availability requirement, the defendant must put forth sufficient evidence before the jury to support a conclusion that the witness was available at the time of trial. *State* v. *Daniels*, 180 Conn. 101, 110, 429 A.2d 813 (1980).

"To have the jury charged on the rule, the party claiming the benefit of it must show that he is entitled to it. . . . A possible witness whose testimony is for any reason comparatively unimportant, cumulative or inferior to what has been offered should be dispensed with on the general ground of expense and inconvenience, without anticipation that an inference may be invoked." (Citations omitted; internal quotation marks omitted.) *State* v. *Adams*, 14 Conn. App. 119, 128–29, 539 A.2d 1022 (1988). "Whether an absent witness has superior or peculiar information and whether an adverse inference can be drawn is a question of fact for the trier. *Perl* v. *Case*, 3 Conn. App. 111, 115, 485 A.2d 1331 (1985). This court cannot reverse or modify the trial court's determination of fact unless they are clearly erroneous." *State* v. *Williams*, 20 Conn. App. 263, 266, 565 A.2d 1365 (1989).

In making its decision, the court had before it the testimony of the victim and four constancy of accusation witnesses. The court had reviewed in camera the notes made by Bond in her role as the victim's psychologist and found that they did not contain information relevant to the case.[2] The court found that Bond's testimony would have been cumulative and that the defendant did not prove at trial that Bond was available. After concluding that Bond's testimony would be relatively unimportant and that it would result in unnecessary expense and inconvenience, the court rejected the defendant's request for a *Secondino* charge.

In support of his claim that the court improperly failed to give a *Secondino* charge, the defendant relies on the fact that the victim testified that Bond was a therapist whom she had seen nine times, that Bond was present when she gave her statement to the police about the defendant's actions and that she told Bond that the defendant had touched her breasts and had "licked" her. Further, the defendant contends that Bond was available to testify, and was a witness the state would naturally have produced. Furthermore, the defendant argues the state was in a superior position to know and understand the testimony she would have provided because she was the victim's therapist.

On the basis of the testimony of the witnesses, Bond could only repeat Cybulski's and Tuller's testimony. The court inspected the notes of Bond's therapy sessions with the victim in camera, and, on the bases of that inspection, which did not reveal relevant information, and Bond's testimony before the court in connection with the defendant's request to inspect these notes, the court found that Bond's testimony would be comparatively unimportant. Additionally, the record does

[2] The trial court reviewed these notes at a hearing in connection with the defendant's request to examine Bond's notes for exculpatory information. At this hearing, the court also heard testimony from Bond regarding the notes.

not indicate that there was sufficient evidence before the jury to demonstrate that Bond was available to be called as a witness, as required to warrant a missing witness instruction. *State* v. *Daniels*, supra, 180 Conn. 110. We cannot find that the court's decision not to include a *Secondino* instruction in its charge to the jury with reference to Bond was clearly erroneous.[3]

## II

The defendant next claims that the court improperly failed to grant a mistrial based on improper remarks made by the assistant state's attorney. Specifically, the defendant contends that during final argument the state attempted to inflate the credibility of Cybulski, a youth officer, and Tuller, a social worker, by referring to them as experts when they had not been qualified as experts during the trial. The assistant state's attorney also stated, in referring to the victim's statements, that the victim's account passed muster with Cybulski and Tuller, who are experts. The court sustained the defendant's objection to these statements and gave the following curative instruction: "Whether or not [Cybulski and Tuller] found the child credible has nothing to do with this case. That's your determination as to the credibility, not anyone else's here, so obviously you are to disregard any reference to whether or not someone else thought the child was credible. . . . I did not find either of those individuals [Cybulski and Tuller] to be expert and their testimony wasn't submitted as expert testimony, at least not in my judgment . . . . They may be professional in their fields, but they did not qualify as being experts and so you should not consider them as such."

---

[3] Although not part of the trial court's reasoning, it is worthy to note that the trial court gave the jury a *Secondino* instruction in connection with the failure of the victim's mother to testify, and that the defendant, in his summation to the jury, forcefully and repeatedly made the argument that Bond was the victim's therapist and had information that the victim shared with her, and that the state could have called Bond as a witness, but failed to do so.

The defendant claims that the assistant state's attorney's remarks were improper and denied him his state and federal constitutional rights to due process and a fair trial. "In analyzing the defendant's claim, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 539–40, 529 A.2d 653 (1987). Courts have focused on several factors in determining whether prosecutorial misconduct was so serious as to amount to a denial of due process. Among the factors considered are the severity of the conduct, the frequency of the conduct, the centrality of the misconduct to the critical issues in the case and the strength of the curative measures adopted. Id., 540. In this case, the statements of the assistant state's attorney were inaccurate and objectionable and were such as to bolster the credibility of the victim, who was the key state's witness. On the other hand, the statements were made only on one occasion, during closing argument, and the trial court gave a curative instruction. The fact that the reference to the witnesses as experts was made only in closing argument, was not repeated and was coupled with an immediate objection by the defendant and a strong and clear curative instruction by the court convinces us that the defendant was not denied a fair trial.

## III

The defendant further claims that there was insufficient evidence to prove that he committed an act of sexual assault in the first degree on or after October 1, 1989. We agree. Count one of the substitute information

charged the defendant with violating General Statutes § 53a-70 (a) (2), sexual assault in the first degree, in that during the months of October through December, 1989, he engaged in sexual intercourse, specifically cunnilingus, with a person under thirteen years of age. The statute, § 53a-70 (a) (2), took effect on October 1, 1989.[4] The defendant contends that the victim's testimony was the only evidence offered to prove the date on which the offense occurred, and that on the basis of that testimony the jury could not reasonably conclude beyond a reasonable doubt that the offense took place on or after October 1, 1989.[5]

The victim's testimony does not present us with a specific date for the cunnilingus incident. We must conclude, however, that the jury found that the offense took place on or after October 1, 1989, because they were instructed that in order to find the defendant guilty of violating § 53a-70 (a) (2) they must find that the act of cunnilingus occurred on or after October 1, 1989, and because it is presumed that a jury follows the instruction of the court. See *State* v. *Parris*, supra, 219 Conn. 294.

In determining whether there was sufficient evidence for the jury to find that the act of cunnilingus took place on or after October 1, 1989, we review the evidence in

[4] Public Acts 1989, No. 89-359.

[5] The court instructed the jury as follows: "The state alleges that the charge of sexual assault in the first degree occurred between October and December of 1989. The date of October 1, 1989, is very important with respect to this particular charge of sexual assault in the first degree because this particular section of the Connecticut General Statutes § 53a-70 (a) (2), did not become law until October 1, 1989.

"A person can not be convicted of committing a crime until the assault which would make his conduct a crime becomes law. Therefore, I instruct you that even if you find the defendant—that the defendant committed the crime of sexual assault in the first degree under § 53a-70 (a) (2), you may not find him guilty of this crime unless you also find that the act of cunnilingus which constituted the crime was committed on or after October 1, 1989."

the light most favorable to sustaining the verdict. *State v. Williams*, 231 Conn. 235, 251, 645 A.2d 999 (1994). In doing so, we determine whether, on the basis of the facts established and the inferences reasonably drawn therefrom, the jury could have reasonably concluded that the ·cumulative effect of the evidence established guilt beyond a reasonable doubt. *State v. Brown*, 232 Conn. 431, 437, 656 A.2d 997 (1995).

The defendant does not challenge the sufficiency of the evidence that supports the jury's finding that the cunnilingus incident occurred. The issue before us is whether the testimony supports the jury's conclusion that the defendant committed that act on or after October 1, 1989. The state contends that the victim testified that the couch incident happened in October, 1989, and further testified that the defendant stopped living with her and her mother about six months after this final incident of sexual abuse, which also, according to the state, would place the act of cunnilingus in October, 1989. Additionally, the state argues that the constancy of accusation evidence, which is based on the victim's December, 1992 statement that the couch incident occurred in October, 1989, clearly supports the jury's finding.

The state supports its contention that the victim testified that the couch incident happened in October, 1989, with the following testimony:

"[Assistant State's Attorney]: Now you indicated that the last time he touched you improperly was near your tenth birthday; is that right?

"[Victim]: Yes.

\* \* \*

"[Defense Counsel]: And you testified earlier that this incident in October of '89 was the last time that [the defendant] touched you in any way?

"[Victim]: Yes."

This testimony is not sufficient to support the conviction. A search of the transcript of the victim's testimony does not reveal that she testified that the act of cunnilingus or any improper touching by the defendant occurred near her tenth birthday. The evidence established that the victim had her tenth birthday on October 20, 1989. The remainder of the testimony on which the state relies, however, refers to statements made by the victim that were never admitted as substantive evidence in this trial. The questions by the assistant state's attorney and defense counsel assume facts not in evidence.[6] Other evidence elicited by both the prosecution and the defense clearly showed that the victim did not remember when the couch incident took place.[7]

[6] The basis for the assumptions that the defendant last touched the victim improperly near her tenth birthday in October comes from the interview with Cybulski, Bond and Tuller one year before the trial and repeated in the constancy of accusation testimony given by Cybulski.

[7] The state questioned the victim about the date of the couch incident as follows:

"Q. When was this now, if you remember?

"A. It was when my mom went to New Britain to see my brother.

"Q. Now do you remember, if that was near any particular event in your life, such as a birthday?

"A. I don't remember.

"Q. You remember telling someone it was near your tenth birthday in October?

"A. Yes. It was in the wintertime.

"Q. I'm sorry?

"A. It was in the winter."

Defense counsel also questioned the victim about the date of the incident:

"Q. Let me go into the incident in 1989 that you say happened on the couch in the living room. Your birthday is in October, isn't it?

"A. Yes.

"Q. And it's on October 20th?

"A. Yes.

"Q. And in 1989 you were ten years old?

"A. Yes.

"Q. Now, would you say that the incident that you testified about on the couch in the living room happened within a week before your birthday or after your birthday?

"A. I don't remember.

"Q. Could it have been within two weeks?

The state also relies on the victim's testimony that the couch incident occurred about six months before the defendant moved out of the residence. In response to defense counsel's question concerning how long after the couch incident the defendant moved out of the house, the victim answered: "About six months." Defense counsel then asked: "So that would be sometime in March or April?" The victim agreed. Later, the victim again testified that the defendant left in March or April. This testimony cannot be used to establish beyond a reasonable doubt that the offense took place on or after October 1, 1989, because six months prior to March or April is September or October.

The state next argues that the testimony of the constancy of accusation witnesses establishes that the couch incident occurred on or after October 1, 1989. Cybulski testified that the victim had told him one year before the trial that the incident had happened in October, 1989. The trial court charged the jury that they could use the constancy of accusation testimony only to corroborate the constancy and consistency of the victim's allegations. This instruction precluded the jury from using the testimony to establish the facts contained in the victim's allegations concerning the crime. "The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions. *State* v. *Ortiz*, 217 Conn. 648, 669, 588 A.2d 127 (1991)." *State* v. *Parris*, supra, 219 Conn. 294.

In this case, the victim did not testify that the act of cunnilingus occurred on or after October 1, 1989, and the jury could not use the constancy of accusation testimony for that purpose. The evidence does not support

"A. I can't remember.
"Q. So you don't know exactly when it happened?
"A. No.
"Q. Could it have been before October of '89?
"A. I don't remember."

a conclusion that the jury could have reasonably concluded beyond a reasonable doubt that the act of cunnilingus occurred on or after October 1, 1989. The defendant, therefore, could not have been found guilty of violating § 53a-70 (a) (2), sexual assault in the first degree.

## IV

The defendant's final claim is that the court improperly admitted the constancy of accusation evidence. "In sex-related [cases the constancy of accusation] hearsay exception permits a witness to testify to the declarations of the victim complaining about the incident. . . . The evidence is received to confirm the victim's testimony by showing constancy of accusation, on the reasoning that it would be natural to make a complaint if a person had been so attacked, and unnatural if the crime had not been committed. . . . Since the purpose of the exception is to corroborate the victim's testimony, it applies only after the [victim] has testified." (Citations omitted.) C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.22.1; see *State* v. *Kelley*, 229 Conn. 557, 563–66, 643 A.2d 854 (1994); *State* v. *Hammer*, 188 Conn. 562, 565, 452 A.2d 313 (1982); *State* v. *Kinney*, 44 Conn. 153, 156 (1876).

The defendant relies on *State* v. *Ouellette*, 190 Conn. 84, 459 A.2d 1005 (1983), to support his allegation that the trial court admitted the constancy of accusation evidence without sufficient foundation. In *State* v. *Ouellette*, supra, 99, the court stated: "Before [constancy of accusation] evidence can be admitted . . . the trial court must find . . . that the statement was made at a time when it was natural to make it . . . ." The defendant claims that the victim did not make a detailed complaint until approximately three years after the last incident complained of and there were no findings by the court that this complaint was made at a time when

it was natural to make it. The state claims that this issue has not been preserved for appellate review in that no objection was made to the testimony of any of the constancy of accusation witnesses. The defendant counters that the trial court's failure to make the predicate findings required by *Ouellette* for the introduction of constancy of accusation testimony deprived him of a right to confront the witness and deprived him of a fair trial, thereby raising the trial court's error to one of constitutional magnitude and making it reviewable under the holdings in *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[8] In the absence of any one of the four conditions of *Golding*, the defendant's request for review of an unpreserved claim must fail. In applying the facts to a *Golding* review, an appellate tribunal is free to focus on whichever condition is most relevant in the particular circumstances. *State* v. *Golding*, supra, 240.

The constancy of accusation rule "is an evidentiary rule of long standing in this jurisdiction." *State* v. *Dabowski*, 199 Conn. 193, 199, 506 A.2d 118 (1986). In its application to this case the claim does not rise to the constitutional level required by the second prong of *Golding*. See *State* v. *Battle*, 39 Conn. App. 742, 750, 667 A.2d 1288 (1995). Furthermore, even if this issue had been preserved, it is evident from the record that the defendant took full advantage of his opportunity to cross-examine the victim and each constancy of accusa-

[8] A defendant can prevail on an unpreserved claim "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

tion witness. His right to confront the witnesses against him was fully preserved.

We also decline to review this claim under the plain error doctrine. "Plain error is reserved for extraordinary situations where the existence of the error is so obvious that it affects public confidence in the fairness and integrity of judicial proceedings." *State* v. *Goodrum*, 39 Conn. App. 526, 541–42, 665 A.2d 159 (1995). The defendant's claim does not warrant such review.

The judgment is affirmed as to the conviction of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes § 53-21; the judgment is reversed as to the conviction of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and the case is remanded with direction to render a judgment of acquittal of sexual assault in the first degree and to resentence the defendant accordingly.

In this opinion O'CONNELL, J., concurred.

LANDAU, J., concurring in part, dissenting in part. I concur with the majority insofar as it affirms the judgment of conviction for sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes § 53-21. I disagree, however, with the majority's conclusion that the evidence was insufficient to support the jury's verdict of guilty on the charge of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2). I must, therefore, respectfully dissent.

" 'The two part test for evaluating the sufficiency of the evidence in a jury trial is well established. First, the reviewing court construes the evidence presented at trial in a light most favorable to sustaining the verdict.

. . . The reviewing court then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from them, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct.' . . . *State* v. *Wagner*, 32 Conn. App. 417, 429–30, 629 A.2d 1146, cert. denied, 228 Conn. 912, 635 A.2d 1231 (1993)." *State* v. *Crosby*, 36 Conn. App. 805, 820, 654 A.2d 371, cert. denied, 232 Conn. 921, 656 A.2d 669 (1995).

The victim's testimony established the following facts. The victim's birthday was October 20, and she turned ten in October, 1989. The last time the defendant sexually abused her was when he performed an act of cunnilingus upon her sometime near her tenth birthday. The defendant moved out of the victim's house in March or April, 1990, which was about six months after the incident occurred. Moreover, the time period surrounding the victim's birthday in October, 1989, was the only time frame mentioned in connection with the "couch incident."

The linchpin of the majority's conclusion that the evidence was insufficient to allow the jury to find that the alleged act of sexual abuse occurred after October 1, 1989, is that it was elicited from the victim on questions that assumed facts not in evidence. This evidence, however, was admitted without objection. "If evidence is admitted without objection, it is given such weight as the trier of fact deems it is worth. *State* v. *Rawls*, [198 Conn. 111, 118, 502 A.2d 374 (1985)]; *State* v. *Banks*, 194 Conn. 617, 620, 484 A.2d 444 (1984); *State* v. *Ruth*, 16 Conn. App. 148, 152, 547 A.2d 548 (1988), cert. denied, 209 Conn. 827, 552 A.2d 434 (1989)." *State* v. *Kulmac*, 230 Conn. 43, 71, 644 A.2d 887 (1994).

"In cases in which . . . evidence has been admitted without objection, we have held that the trier of fact could have relied on . . . the matters stated therein, for whatever they were worth on their face. *Sears* v. *Curtis*, 147 Conn. 311, 317, 160 A.2d 742 (1960); *Volck* v. *Muzio*, 204 Conn. 507, 518, 529 A.2d 177 (1987); *Danahy* v. *Cuneo*, 130 Conn. 213, 217, 33 A.2d 132 (1943). . . . [E]vidence is reliable to the extent that it has rational probative force. *State* v. *John*, 210 Conn. 652, 663, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Carey*, 228 Conn. 487, 495–96, 636 A.2d 840 (1994).

"As explained by Professor McCormick: If [inadmissible] evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. . . . This principle is almost universally accepted. . . . The principle applies to any ground of incompetency under the exclusionary rules. It is most often invoked in respect to hearsay, but it has been applied to evidence vulnerable as secondary evidence of writings, opinions, evidence elicited from incompetent witnesses or subject to a privilege, or subject to objection because of the want of authentication of a writing, of the lack-of-knowledge qualification of a witness, or of the expertness qualification. 1 C. McCormick, Evidence (4th Ed. 1992) § 54, pp. 219–20. . . . [A]ppellate review of the sufficiency of the evidence . . . properly includes . . . evidence even if such evidence was admitted despite a purportedly valid objection." (Citation omitted; internal quotation marks omitted.) *State* v. *Carey*, supra, 228 Conn. 496.

Construing the evidence admitted in the light most favorable to sustaining the verdict, the cumulative effect of the victim's testimony that the couch incident

occurred somewhere near her tenth birthday in October, 1989, together with her testimony that the defendant vacated the apartment in March or April, 1990, approximately six months after the incident, is sufficient evidence for the jury reasonably to have concluded that the alleged act occurred after October 1, 1989.

I would affirm the judgment as to count one.