STATE OF CONNECTICUT *v.* PETER LEGRANDE
(AC 18312)

O'Connell, C. J., and Spear and Mihalakos, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 10—officially released October 17, 2000

*Pamela S. Nagy*, assistant public defender, with whom, on the brief, were *Carrie Cereto* and *Lori A. Lastrina*, certified legal interns, for the appellant (defendant).

*Nancy L. Chupak*, deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Kevin J. Murphy*, assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant, Peter Legrande, appeals from the judgment of conviction, rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes (Rev. to 1989) § 53-21, one count of sexual assault in the second degree in violation of General Statutes (Rev. to 1989) § 53a-71 (a) (1) and one count of sexual assault in the second degree in violation of General Statutes (Rev. to 1991) § 53a-71 (a) (1).

The defendant claims that the trial court improperly (1) admitted evidence of his uncharged misconduct to show a common scheme or design to sexually abuse young girls, (2) denied his motion for a judgment of acquittal on the ground that the evidence was insufficient to support his conviction of risk of injury to a child as to the victim M, (3) denied his motion for a new trial on the basis of newly discovered evidence, which was brought under Practice Book § 902, now § 42-53, (4) instructed the jury on how it could use his prior felony convictions to assess his credibility and (5) instructed the jury on reasonable doubt and the presumption of innocence. We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. During a three year period, the defendant repeatedly had sexual contact with the two victims, M and S. The defendant was born on April 19, 1958, and M was born on March 7, 1974. The sexual contact involving M began three years after she began baby-sitting for the defendant's two children. In the winter of 1989, shortly after the defendant purchased a home in West Hartford, the defendant took M to the third floor of his new

residence and touched her breasts. When M started to cry, the defendant stopped and took her home.

On another occasion when M was sleeping at the defendant's home, he told her to change into her pajamas in his presence. M protested, but the defendant insisted that he would not look at her. M took off her pants, shirt and bra, and put on a one piece nightgown. When M lay down in bed, the defendant laid down next to her, placed his hands underneath her nightgown, touched her breasts and vagina, and then inserted his finger into her vagina. When M asked the defendant to stop, he refused and responded that it would be all right.

The defendant's conduct of touching M underneath her clothes and inserting his finger into her vagina continued until the end of 1989, and also progressed during that time to the defendant's inserting his penis into M's vagina. By Christmas, 1989, the defendant had had sexual intercourse with M between two and four times.

In the summer of 1990, S, who was born on August 4, 1977, began baby-sitting for the defendant's children.[2] During that summer, the defendant started calling S names that were inappropriate, touching her buttocks, and grabbing and kissing her. One day while S was baby-sitting, the defendant asked her to sit on his lap. When she did, the defendant touched her underneath her shirt, shorts and underpants. He then inserted his finger into her vagina.

---

[2] One afternoon several months before S began baby-sitting for the defendant's children, the defendant drove M to her home in West Hartford after M had watched the defendant's children. When the defendant reached her home, instead of dropping M off, he made her wait in the car with the children so that he could go inside the house. S was the only one in the house at the time, and the defendant sent her into a bathroom to get him aspirin. The defendant followed S into the bathroom and asked her for a kiss. When S gave him a kiss, he told her that that was not the type of kiss you give to someone you love. The defendant then kissed her on the lips and stuck his tongue into her mouth.

One night between the fall of 1990 and the summer of 1991, when S was baby-sitting and playing video games, the defendant came home and ordered her to stop playing the game and to come to the sofa. When S complied, the defendant laid down on the sofa and had her lie next to him. Afraid that the defendant was about to engage in sexual intercourse with her, S told him that she was not going to go any further. The defendant then got off the sofa and went into his room. S followed the defendant as he sat on his bed and cried. The defendant told S that he loved her and that he was sorry. He then asked her if she had ever told anybody, and when she said that she had not, he told her that she could never tell.

On another occasion, in an early morning in the summer of 1991, the defendant asked S to accompany him to a garage outside of West Hartford. On their way back from the garage, the defendant drove into the back of a parking lot of a movie theater. The defendant kissed S, touched her underneath her clothes and inserted his finger into her vagina. When S told the defendant to stop and said that she was not going to allow him to touch her, he became angry and started to drive home. On the way, he asked her if she was still a virgin and told her that the boy who "[takes] her virginity" was going to be lucky.

The final incident of sexual contact committed against M occurred on the day after Thanksgiving, 1991. That day, after the defendant and M returned from playing bingo at the Foxwoods Casino in Ledyard, the defendant led M to the third floor of his residence, kissed and touched M, took off her clothes and inserted his finger into her vagina. M became upset and asked the defendant to stop. The defendant refused to stop and, instead, penetrated M's vagina with his penis. M started to cry, and the defendant responded by also crying. He

then told her that he loved her and that she was special, and then asked her if she would ever turn him in.

The defendant was subsequently arrested and charged in connection with his conduct but, because of a statute of limitations bar, was not charged in connection with his actions committed against M prior to December 22, 1989. During trial, the court admitted testimony from M regarding the defendant's uncharged sexual conduct that occurred prior to December 22, 1989, for the limited purpose of showing the defendant's common plan or design to sexually abuse young girls. M also testified that although sexual contact by the defendant continued through 1990, she did not recall any one specific incident having occurred between December 22, 1989, and March, 1990. After the presentation of evidence, the court instructed the jury on, inter alia, the use of the defendant's prior convictions to assess his credibility, the presumption of innocence and the state's burden of proving its case beyond a reasonable doubt.

The jury found the defendant guilty of two counts of risk of injury to a child and two counts of sexual assault in the second degree. A mistrial was declared with regard to the count of sexual assault in the first degree. After the verdict, the defendant filed a motion for a judgment of acquittal on the ground of insufficient evidence and a motion for a new trial under Practice Book § 902, now § 42-53, on the basis of newly discovered evidence. The court denied the defendant's motions. This appeal followed.

I

The defendant first claims, on two grounds, that the court improperly admitted M's testimony about his uncharged misconduct that occurred prior to December 22, 1989. We disagree.

"As a threshold matter, we set forth the standard by which this court reviews a challenge to a trial court's [evidentiary ruling]. The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . *State* v. *Berger*, 249 Conn. 218, 229, 733 A.2d 156 (1999)." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 326, 746 A.2d 761 (2000).

A

The defendant claims that the court improperly determined that M's testimony about his uncharged misconduct was relevant to show a common plan or design to sexually abuse young girls. We decline to review this claim.

The defendant failed to object specifically to M's testimony at trial on the ground of relevance, but argues on appeal that his claim was preserved at trial because he objected to her testimony on the ground that its prejudicial effect outweighed its probative value. "Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection [to the trial court]. . . . This court reviews rulings solely on the ground on which the party's objection is based." (Internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 791, 717 A.2d 1140 (1998). The defendant's claim is, therefore, unpreserved.

The defendant alternatively argues that his unpreserved claim is entitled to review under the plain error

doctrine. Practice Book § 60-5.[3] "[R]eview under the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Stephens*, 249 Conn. 288, 291, 734 A.2d 533 (1999). This claim does not meet that standard.

## B

The defendant next claims that despite the relevancy of M's testimony regarding his uncharged misconduct, the court improperly determined that the probative value of the evidence outweighed its prejudicial effect. He claims that M's testimony that he had forced sexual intercourse with her and subjected her to sexual contact on numerous occasions inflamed the jury and ultimately led to his conviction of all charges relating to S. We are not persuaded.[4]

"Relevant evidence of prior uncharged misconduct that is prejudicial in nature is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." (Internal quotation marks omitted.) *State* v. *Ortiz*, 40 Conn. App. 374, 380, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). "Of course, [a]ll adverse evidence is damaging to one's

[3] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[4] The defendant also argues that the admission of evidence about uncharged misconduct likely resulted in conviction because the evidence unfairly bolstered the credibility of both M and S. Because we conclude that the evidence properly was admitted for another limited purpose, we do not see how the credibility of any of the witnesses could have been *unfairly* bolstered.

case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . *State* v. *Woodson*, 227 Conn. 1, 17, 629 A.2d 386 (1993). The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . *State* v. *Bush*, 249 Conn. 423, 430, 735 A.2d 778 (1999)." (Citation omitted; internal quotation marks omitted.) *State* v. *Copas*, supra, 252 Conn. 329–30.

In this case, the court determined that M's testimony about the defendant's uncharged misconduct was relevant and admissible for the limited purpose of showing a common plan or design to sexually abuse young girls. Thereafter, the court determined that the admission of M's testimony regarding the defendant's uncharged misconduct was not unduly prejudicial because the jury was going to hear other similar testimony from M regarding the defendant's charged misconduct.[5] Finally, the court instructed the jury on three separate occasions that M's testimony was to be used for the limited purpose of determining whether the defendant had a common plan or design,[6] not as substantive evidence

[5] Although the defendant argues that the court "failed to consider the effect of this evidence on [S's] case," there is no indication in the record to support that claim.

[6] Before M's testimony, the court instructed the jury in relevant part as follows: "The next section of evidence that we're going to hear from the witness is being offered for a limited purpose. Normally, you hear evidence, you can use it for whatever purpose you think is relevant to the case. . . . But this evidence is being offered only for the purpose of—the state is attempting to show a common plan, scheme or design on the part of the defendant to abuse young girls . . . sexually.

"You may find that to be correct or incorrect, that's your choice. But this evidence is only being offered for that limited purpose and not for any other

of his guilt.[7] Under these circumstances, we do not see how the court abused its discretion by determining that the probative value of the admitted evidence outweighed its prejudicial effect or how there is an appearance, especially in light of the court's numerous instructions to the jury, that an injustice has been done.[8]

## II

The defendant next claims that the court improperly denied his motion for a judgment of acquittal. He contends that the state failed to produce sufficient evidence to support the conviction of risk of injury to a child as to M. We agree.

"In reviewing [a] sufficiency [of the evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so con-

---

purpose or more generalized purpose. And it is only to be used by you for that limited purpose as to whether or not it does reveal, when considering all the evidence that's going to be offered during the trial, a common scheme, plan or design."

After M's testimony, the court repeated this instruction: "As I've said, ladies and gentlemen, the evidence that we've just heard is offered for a limited purpose as to whether . . . there's a common scheme by the defendant to abuse sexually young girls. And it's for that purpose and no other purpose that that evidence is being offered."

In its final charge to the jury, the court again gave an instruction regarding the defendant's uncharged misconduct: "Now, during the trial, one of the witnesses that we referred to as [M] testified as to events that she claimed occurred with the defendant, and they took place prior to December 22nd of 1989. For reasons that relate to the statute of limitations that I'll discuss in a moment, that evidence was offered for a limited purpose. The evidence was offered on the question of whether the defendant engaged in a common scheme or plan to sexually abuse young girls in their teenage years and is to be considered by you only for that limited purpose."

[7] "It is to be presumed that the jury followed the court's . . . instructions unless the contrary appears." (Internal quotation marks omitted.) *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999).

[8] Because we determine that the court properly admitted the challenged evidence, we do not need to engage, as the defendant suggests, in a harmless error analysis.

strued and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [T]his court . . . will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom. . . . *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 654–55, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

After reviewing the evidence and considering the inferences reasonably drawn therefrom in favor of sustaining the verdict, we conclude that the evidence does not reasonably support the jury's conclusion that the defendant was guilty beyond a reasonable doubt of risk of injury to a child as to M. The circumstances in this case are substantially similar to those in *State* v. *Owen*, 40 Conn. App. 132, 145–46, 669 A.2d 606, cert. denied, 236 Conn. 912, 673 A.2d 114, cert. denied, 237 Conn. 922, 676 A.2d 1376 (1996), in which we reversed the judgment of conviction of sexual assault in the first degree on the ground of insufficient evidence. In *Owen*, the substitute information alleged that the defendant "engaged in sexual intercourse, specifically cunnilingus," with the victim "during the months of October through December, 1989 . . . ." Id., 142. The testimony of the victim, who was the only witness, did not "present us with a specific date for the cunnilingus incident." Id. We therefore held that "[t]he evidence [did] not support a conclusion that the jury could have reasonably concluded beyond a reasonable doubt that the act of cunnilingus occurred on or after October 1, 1989"; id., 145–46; the date on which the alleged behavior first constituted sexual assault in the first degree pursuant to Public Acts 1989, No. 89-359. Id., 142.

In this case, count one of the substitute information charged the defendant with violating § 53-21 and alleged "that on or between December 22, 1989, and March 6, 1990 . . . the defendant . . . did an act likely to impair the morals of a child, by engaging in sexual contact with [M] . . . ." The court had ruled that any alleged misconduct that had occurred prior to December 22, 1989, was beyond the applicable statute of limitations, and M turned sixteen on March 7, 1990, so as to be beyond the protection of § 53-21. The state was therefore required to prove that the violation of § 53-21 had occurred during the applicable time frame. M's testimony was the only evidence offered to prove that the offense occurred within the time frame alleged in the substitute information. M's testimony, however, did not establish that the defendant engaged in sexual contact with her during the alleged time period. When the state asked M on direct examination whether sexual contact occurred during the relevant time period, she responded: "I can't say that it definitely occurred." Accordingly, under these circumstances, we cannot say that the evidence reasonably supported the jury's conclusion beyond a reasonable doubt that the defendant was guilty of risk of injury to a child as to M.

### III

The defendant next claims that the court improperly denied his motion for a new trial, which was based on allegedly newly discovered evidence and brought under Practice Book § 902, now § 42-53. He claims that the court should have considered his motion in the interest of justice. This claim is completely without merit.

It is well established that to obtain a new trial on the ground of newly discovered evidence, a defendant must bring a petition under Practice Book § 42-55, formerly § 904. See *State* v. *Jones*, 205 Conn. 723, 729–30, 535

A.2d 808 (1988); *State* v. *Murdick*, 23 Conn. App. 692, 704–705, 583 A.2d 1318, cert. denied, 217 Conn. 809, 585 A.2d 1233 (1991); *State* v. *Servello*, 14 Conn. App. 88, 101–102, 540 A.2d 378, cert. denied, 208 Conn. 811, 545 A.2d 1107 (1988); see also *State* v. *Curley*, 25 Conn. App. 318, 329–30, 595 A.2d 352, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991). "There is a significant difference between Practice Book [§§ 42-53 and 42-54, and § 42-55]. Practice Book [§ 42-53] is concerned with motions for a new trial based on errors committed during the trial. . . . On the other hand, [§ 42-55] provides: A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with [General Statutes § 52-270]." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 729. Because the defendant failed to bring a petition for a new trial on the basis of newly discovered evidence pursuant to Practice Book § 904, now § 42-55, the court appropriately denied his motion.[9]

## IV

The defendant next claims that the court improperly instructed the jury on the use of his prior convictions to assess his credibility in violation of (1) his due process rights to a fair trial, (2) his right to testify on his own behalf and (3) his right to present a defense. He takes issue with the court's instruction to the jury that "[i]f you find that [the defendant's prior felony convictions bear] on his credibility, you *must* use the evidence of the earlier convictions to find that the defendant is not a credible witness and that, therefore, all or some of his version of the events in question is not true." (Emphasis

---

[9] The defendant argues that the motion should have been granted under the rationale of *State* v. *Myers*, 242 Conn. 125, 135–39, 698 A.2d 823 (1997), in which our Supreme Court held that a motion for a new trial was permitted in a case of juror misconduct pursuant to Practice Book § 902, now § 42-53. In the present case, the defendant has not claimed juror misconduct. Therefore, the rationale of *Myers* does not apply.

added.) The defendant claims that the court's instruction improperly mandated that if the jury found that he was previously convicted of other crimes, it had to disbelieve his testimony.[10] We disagree.

[10] The relevant portions of the court's instruction to the jury are as follows: "I want to discuss the subject of credibility, by which I mean the believability of testimony. . . . The credibility, the believability of the witnesses and the weight to be given to their testimony are matters entirely within your hands. It is for you alone to determine their credibility. . . . The credibility of the witness and the truth of the fact is for you to determine.

\* \* \*

"You are entitled to accept any testimony which you believe to be true, and reject, either wholly or in part, the testimony of any witness you believe has testified untruthfully or erroneously. The credit that you give to the testimony offered is, as I have told you, something which you alone must determine. . . .

"It is up to you to accept or reject all or any part of any witness' testimony. If you find that a witness has been inaccurate in one respect, remember it in judging the rest of the witness' testimony. Give to it that weight which your own mind leads you to think it ought to have and which you would attach to it in the ordinary affairs of life . . . .

\* \* \*

"Now, in this case, the defendant . . . took the stand and testified. In weighing the testimony of the defendant, you should apply the same principles by which the testimony of other witnesses [is] tested. . . . A defendant having taken the witness stand stands before you, then, just like any other witness. He is entitled to the same consideration, and you should measure his testimony in the same way as any other witness . . . .

"You should judge the defendant's credibility in the same way you judge any other witness' credibility. You are at liberty, if you so decide, to disbelieve his testimony, to believe some of it and reject other parts, or to believe it entirely.

"Now, evidence was introduced in this case to show that the defendant was convicted of certain crimes . . . . This evidence was offered and admitted for one purpose only: to be weighed by you in testing the defendant's credibility. You may not use this evidence . . . as evidence that the defendant is guilty of the crimes charged in this case. You may not infer that the defendant is likely to have committed the offense charged in this case because he was . . . convicted of crimes before. You may consider the defendant's prior convictions only as they bear on his credibility. If you find that this evidence bears on his credibility, you must use the evidence of the earlier convictions to find that the defendant is not a credible witness and that, therefore, all or some of his version of the events in question is not true.

"You are not required to disbelieve the defendant merely because he has previously been convicted of crimes. It is simply something that you may

The defendant did not object to the court's instruction at trial, but now seeks review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[11] and the plain error doctrine. See footnote 3. Although the record is adequate for review, the defendant's claim regarding the court's instruction is not of constitutional magnitude, as it does not allege the violation of a fundamental right.

"The defendant's claim involves one word out of [the] entire charge. He claims that the word 'must' . . . deprived the jury of its role in determining the defendant's credibility. . . . The defendant cannot demonstrate a violation of his constitutional rights by culling this single word from the entire charge. *State* v. *Turcio*, 178 Conn. 116, 122–23, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); *State* v. *Tropiano*, 158 Conn. 412, 433, 262 A.2d 147 (1969), cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970)." *State* v. *Jenkins*, 29 Conn. App. 262, 266–67, 614 A.2d 1249, cert. denied, 224 Conn. 916, 617 A.2d 171 (1992). When read in context, it is reasonable to read the "must" language as limiting the use of the evidence to the jury's assessment of the defendant's credibility and not to the drawing of an inference of guilt of the crimes charged. The defendant's claim, therefore, fails under the second prong of *Golding*. Further, because there was no manifest injustice, the defen-

take into account in judging his credibility if you find that it bears on that credibility. The weight that you give to that evidence in this regard is for you to decide."

[11] In *Golding*, the court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

dant's claim does not warrant plain error review. *State* v. *Boles*, 223 Conn. 535, 543, 613 A.2d 770 (1992).

V

The defendant finally claims that the court improperly instructed the jury on reasonable doubt and the presumption of innocence in violation of his fourteenth amendment due process right to a fair trial. We disagree.[12]

The standard of review for constitutional claims of improper jury instructions is well settled. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . *State* v. *Schiappa*, 248 Conn. 132, 171, 728 A.2d 466 (1999); accord *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995)." (Internal quotation marks omitted.) *State* v. *Delvalle*, 250 Conn. 466, 470, 736 A.2d 125 (1999).

The defendant claims that the court's charge to the jury that "the law is made to protect society and persons whose guilt has not been established beyond a reasonable doubt and not to protect those whose guilt has

---

[12] The defendant failed to object to the challenged instruction at trial and now seeks review under *State* v. *Golding*, supra, 213 Conn. 239-40. We will review this claim because the record is adequate, and the claim of instructional error regarding the burden of proof and presumption of innocence is constitutional in nature. See *State* v. *Adams*, 225 Conn. 270, 289, 623 A.2d 42 (1993).

been so established" diluted his presumption of innocence and the state's burden of proof. Our resolution of this claim is governed by *State* v. *Schiappa*, supra, 248 Conn. 132, in which our Supreme Court, relying on its prior case law, rejected a defendant's claim that an instruction virtually identical to the one in this case misled the jury and amounted to a constitutional violation. The court reasoned that the "court's charge, when viewed in its entirety, adequately apprised the jury that the defendant was entitled to a presumption of innocence unless and until the state proved her guilty beyond a reasonable doubt." Id., 173. We therefore conclude that the defendant was not deprived of a fair trial.

The judgment is reversed as to the conviction of risk of injury to a child as to M in the first count of the substitute information and the case is remanded with direction to render a judgment of acquittal on that count. In all other respects the judgment is affirmed.

In this opinion the other judges concurred.