# STATE OF CONNECTICUT *v.* JULIUS MARSHALL
## (AC 14408)

Foti, Lavery and Schaller, Js.

Argued November 6, 1996—officially released May 6, 1997

*Pamela S. Nagy,* special assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, *John M. Massameno,* senior assistant state's attorney, and *David Scannell,* legal intern, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals from the judgment of conviction, following a jury trial, of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21. He claims that the trial court improperly (1) permitted the state to introduce the videotaped testimony of the minor victim taken outside the presence of the defendant, (2) admitted the testimony of six constancy of accusation witnesses, (3) admitted two videotaped interviews of the victim as constancy of accusation evidence, (4) admitted hearsay testimony under the residual hearsay exception, and (5) instructed the jury regarding consciousness of guilt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1992, the defendant was living in Bloomfield with his wife, their two year old daughter, M, and their infant son. Sometime that year, M's mother watched a

television program with M that described how to talk to children about child sexual abuse. After viewing the program, she began teaching M about good and bad touches. Subsequently, on August 17, 1992, M's maternal grandmother, Delrosa DelSol, was babysitting M when she noticed that M was "walking funny." When DelSol asked M why she was walking this way, M replied, "[D]addy hurt my bottom, daddy put his finger up my bottom."

After hearing her granddaughter's allegations, DelSol called her daughter, M's mother, and told her that she was concerned about what M had said. M's mother did nothing at this time. The next day while DelSol was babysitting M, M demonstrated a licking action and told DelSol that her daddy did something to her chim-chim[1] and that "he use his like a cat." DelSol called M's mother and warned her that, if she did not report these allegations to someone, DelSol would. At that point, M's mother called Abioseh Cole, the family pastor, and asked to see him.

In the afternoon of August 18, 1992, M's mother met with Cole at the town hall annex. Ultimately, M's mother told Cole that M had told her that the defendant was sexually abusing her. Cole then called DelSol and asked her to bring M to the annex. When M arrived, Cole interviewed her and asked her "what has happened." In response to Cole's questioning, M went straight to a chair and bent down and started licking the chair and said "Daddy lick me on my chim-chim and my butt." After the interview, Cole informed M's mother and Del-Sol that he was required to report what he had learned.

Before reporting the incident, however, Cole called Detective Peter Crombie of the department of children

---

[1] M's mother testified that "chim-chim" is the term that she taught M to use when she referred to her vaginal area.

and families[2] (department) and asked him to come to the annex. Upon arriving, Crombie was informed by Cole about what had happened and then he interviewed M. During the interview, M repeated her allegations that "daddy had licked her on the chim-chim and the butt," and demonstrated the same licking of the chair motion that she had made earlier. Subsequently, Cole called the department and filed an oral report. The next morning Cole faxed a written report to the department.

On August 20, 1992, Deborah Espittia, a department social worker, and Crombie interviewed M at DelSol's house.[3] Crombie showed M anatomically complete diagrams depicting a young female child and an adult male. During the interview, M indicated, with the aid of the diagrams, that the defendant had touched her on her vaginal and buttocks area. On September 21, 1992, the department requested that M be examined by Frederick Berrien, an expert on the subject of child abuse. Berrien examined M and prepared a written report of his findings. The report indicated that M's hymenal opening was well beyond normal for a child M's age and he noted an abnormal cleft and a mound on M's hymen. Berrien concluded that M's vagina had been penetrated and that the penetration resulted from blunt trauma.

At trial, the state introduced the videotaped testimony of M, taken outside the presence of the defendant, in which she identified the vaginal and buttocks as areas where the defendant had touched her. The state also introduced two videotaped interviews of M as constancy of accusation evidence. Six other constancy witnesses testified at the trial. Following his conviction, the defendant appealed.

---

[2] The department of children and families was known as the department of children and youth services when the allegations in this case first came to light.

[3] As a result of M's allegations, M went to live with DelSol.

## I

The defendant claims first that the trial court improperly allowed the state to introduce the videotaped testimony of M, taken outside the presence of the defendant, thereby violating the defendant's federal and state constitutional rights to face-to-face confrontation.

Prior to the trial in this case, the state moved for permission to videotape the testimony of M outside the presence of the defendant. An evidentiary hearing was held before the trial court, *Espinosa, J.* At the hearing, the state introduced the testimony of Bruce Freedman, a psychologist, who met with M for approximately four hours on two separate days. Freedman opined that M's testimony would be "absolutely unreliable" if she were forced to testify in the presence of the defendant because "[a] child of that age . . . is much more interested in pleasing a parent and saying something that will please the parent, than they are in telling the truth or satisfying the conditions of a court, or another person they don't know well." In response, the defendant offered the testimony of M's mother who stated that M would not be intimidated by the defendant and that she did not exhibit any fear of the defendant. The trial court granted the state's motion over the objection of the defendant.

"[I]n criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. . . . [A] trial court must balance [in a case-by-case analysis] the individual defendant's right of confrontation against the interest of the state in obtaining *reliable* testimony from the particular minor victim in question. . . . [The] trial court must determine, at an evidentiary hearing, whether the state has demonstrated a compelling need

for excluding the defendant from the witness room during the videotaping of a minor victim's testimony. In order to satisfy its burden of proving compelling need, the state must show that the minor victim would be so intimidated, or [for any number of reasons] inhibited, by the physical presence of the defendant that the trustworthiness of the victim's testimony would be seriously called into question. . . . [T]he state bears the burden of proving such compelling need by clear and convincing evidence." (Citation omitted; emphasis added.) *State* v. *Jarzbek*, 204 Conn. 683, 704–705, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

The defendant claims that the trial court's finding of compelling need was improper because there was evidence presented at the hearing that M would not be intimidated by or fearful of the defendant. *Jarzbek* clearly states that "the primary focus of the trial court's inquiry must be on the reliability of the minor victim's testimony, not on the injury that the victim may suffer by testifying in the presence of the accused." Id., 705. It is not a prerequisite, therefore, that the state demonstrate that a minor victim will be intimidated or frightened if he or she is required to testify in the presence of the accused. Rather, the state may be able to demonstrate a compelling need by showing that "for any number of reasons [the minor victim would be] inhibited by the presence of the accused." Id., 703. In this case, the state's expert testified that M's testimony would be "absolutely unreliable" if taken in the presence of the defendant. The trial court balanced the defendant's right of confrontation against the interest of the state in obtaining reliable testimony from the minor victim and determined that the state had shown, by clear and convincing evidence, that a compelling need existed to take the testimony of the child victim outside the physical presence of the defendant. We conclude, therefore,

that the trial court properly permitted the state to video-tape the testimony of M outside the presence of the defendant.

II

The defendant claims next that the trial court improperly admitted into evidence the testimony of six constancy of accusation witnesses. He contends that the cumulative testimony of the six constancy of accusation witnesses prejudiced him at trial. The defendant concedes that he did not preserve this claim at trial. He seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). He also seeks review of this claim under the plain error doctrine. Practice Book § 4185.

Because this claim fails the second prong of the test set forth in *Golding*, we decline to review it further. We have consistently denied review of the same unpreserved claim that the defendant attempts to raise here. See *State* v. *DePastino*, 228 Conn. 552, 568, 638 A.2d 578 (1994). Also, "[p]lain error is reserved for extraordinary situations where the existence of the error is so obvious that it affects public confidence in the fairness and integrity of judicial proceedings." (Internal quotation marks omitted.) *State* v. *Owen*, 40 Conn. App. 132, 148, 669 A.2d 606, cert. denied, 236 Conn. 912, 673 A.2d 114, 237 Conn. 922, 676 A.2d 1376 (1996). The defendant's claim does not warrant such review.[4]

---

[4] We note that our courts have held that constancy of accusation testimony presented in this manner is not prejudicially cumulative, but, rather, demonstrates that the victim had reported the incident in a constant and consistent fashion. See *State* v. *Parris*, 219 Conn. 283, 293–94, 592 A.2d 943 (1991) (constancy of accusation testimony of four witnesses not prejudicially cumulative); *State* v. *Zoravali*, 34 Conn. App. 428, 439–41, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994) (constancy of accusation testimony of seven witnesses not prejudicially cumulative); *State* v. *Parsons*, 28 Conn. App. 91, 105–106, 612 A.2d 73, cert. denied, 223 Conn. 920, 614 A.2d 829 (1992) (constancy of accusation testimony of eight witnesses not prejudicially cumulative).

## III

The defendant claims next that the trial court improperly admitted two videotaped interviews of M as constancy of accusation evidence.

Prior to trial, the prosecutor met with M and DelSol at the state's attorney's office on three separate occasions. At the first meeting, the prosecutor did not question M regarding the alleged sexual assault, but, instead, showed her around the state office building and attempted to discern if M knew right from wrong. On August 18, 1996, the prosecutor again met with M and DelSol. At this meeting, the prosecutor videotaped M while he interviewed her about her allegations of sexual abuse by the defendant. During this videotaped interview, M indicated that the defendant had touched her in her vaginal and buttocks area with his finger. On September 2, 1996, the prosecutor met with M and DelSol for a third time. At this meeting, the prosecutor videotaped M while she answered questions regarding the alleged sexual assaults by the defendant. In this interview, M indicated that the defendant had touched her in her vaginal and buttocks area with his tongue.

At trial, during the testimony of DelSol, the state offered the two videotaped interviews of M as constancy of accusation evidence. The defendant objected to the introduction of these two videotapes claiming that they were made at a time that was unnatural for the victim to disclose the abuse and that they were inherently unreliable because they were taken by the prosecutor. The trial court overruled the defendant's objection and permitted the jury to view both videotapes at trial.

The defendant first claims that these videotaped interviews were taken at a time unnatural for the victim to disclose the abuse because they were taken two years after M's initial allegations. Our Supreme Court

has held that "[we] leave the evaluation of the timing of a victim's [constancy] statements and any 'naturalness' thereof in the hands of the jury." *State* v. *Parris*, 219 Conn. 283, 292, 592 A.2d 943 (1991). The defendant next claims that these videotaped interviews were inherently unreliable because they were taken by the state prosecutor. Our Supreme Court has addressed this issue in *State* v. *DePastino*, supra, 228 Conn. 568–69. In *DePastino*, a social worker assigned to investigate a case videotaped an interview with the minor victim and the videotape was used by the police in their investigation. The defendant claimed that because this videotape was prepared for use by the prosecution it should not have been admitted at trial as constancy of accusation evidence. The court rejected the defendant's claim and admitted the victim's videotaped statements into evidence. Id., 569.

"The trial court has broad discretion in ruling on the admissibility of evidence and only upon a showing of a clear abuse of discretion will this court set aside rulings on evidentiary matters." *State* v. *Siering*, 35 Conn. App. 173, 178, 644 A.2d 958 (1994). Our courts have upheld the admission of tape-recorded statements of the victim as constancy of accusation evidence; *State* v. *Kelley*, 229 Conn. 557, 566–67, 643 A.2d 854 (1994); *State* v. *Bethea*, 24 Conn. App. 13, 20–21, 585 A.2d 1235, cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991); and a videotaped interview of the victim as constancy of accusation evidence. *State* v. *DePastino*, supra, 228 Conn. 569. The timing and the naturalness of the interviews are matters for the jury to weigh. *State* v. *Parris*, supra, 219 Conn. 292. In this case, the defendant examined the videotaped interviews before trial and before M's videotaped testimony. He had the opportunity, thus, to cross-examine M about any claimed inconsistencies between her testimony and the videotaped interviews, and to cross-examine DelSol about the circumstances

under which the child's statements were recorded. See *State* v. *DePastino*, supra, 568–69, citing *State* v. *Bethea*, supra, 20–21. We conclude, therefore, that the trial court did not abuse its discretion by admitting these videotapes into evidence.[5]

## IV

The defendant claims next that the trial court improperly admitted hearsay statements under the residual hearsay exception.

At trial, the state asked Cole to testify as to exactly what M's mother said to him during their August 18, 1996 meeting concerning M's allegations of sexual abuse. The defendant objected on the ground that Cole's testimony as to what M's mother had said at the meeting was inadmissible hearsay. The trial court heard arguments from both sides on whether the out-of-court statements should be admitted. The trial court con-

---

[5] The defendant claims for the first time on appeal that he was denied his federal and state constitutional rights of confrontation and equal protection because of the admission of the constancy of accusation testimony in this case. As this court has previously noted, that claim has been decided by our Supreme Court. "Constancy of accusation testimony does not violate a defendant's right of confrontation when, as in this case, the declarant testifies and is subject to full and effective cross-examination. *State* v. *Kelley*, 229 Conn. 557, 563–66, 643 A.2d 854 (1994). Similarly, constancy of accusation testimony does not violate a defendant's state or federal right to equal protection. Id., 564–65. . . . We therefore conclude, on the basis of Connecticut Supreme Court precedent, that the defendant was not denied his right of confrontation or his right to equal protection by admitting constancy of accusation testimony." *State* v. *Oliver*, 41 Conn. App. 139, 146–47, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996). The defendant also claims that this court should abandon the constancy of accusation doctrine. Our Supreme Court recently rejected this claim in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996). We note that our Supreme Court did modify the constancy of accusation doctrine in *Troupe*, but "that the modification . . . will apply only to those cases in which constancy of accusation testimony has not yet been admitted into evidence on the date of the publication of [*Troupe*]." Id., 305. In this case, the modification announced in *Troupe* does not apply.

cluded that the statements were admissible under the residual hearsay exception.

The residual, or catch-all, exception to the hearsay rule allows a trial court to admit hearsay evidence not admissible under any of the established exceptions if (1) there is a reasonable necessity for the admission of the statement, and (2) the statement is supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions. *State* v. *Sharpe*, 195 Conn. 651, 664, 491 A.2d 345 (1985). "The court has properly taken a cautious approach to the use of the catch-all exception." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.25.

We begin the analysis with the reasonable necessity requirement of *Sharpe*. "Wigmore explains that the necessity requirement [of the residual hearsay exception] is met when, unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources. [5 J. Wigmore, Evidence (Chadbourne Rev. 1974) § 1421.]" *State* v. *Sharpe*, supra, 195 Conn. 665. In this case, the declarants were not dead or otherwise unavailable. Our inquiry, thus, is whether the facts contained in these statements would be lost because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources.

At trial, the state asked Cole to testify as to "[e]xactly what it was that [M's mother] reported and the words that she used." Cole testified that M's mother told him "that [M] had accused her father of sexually molesting her." The state also asked Cole to testify as to what M's mother told him M had told her. Cole testified that

M's mother told him that "[M] had said that her father had licked her in the chim-chim and her butt," and that "[M] said, 'No, daddy, no.' " The facts contained in M's mother's statements could not have been lost because M recounted them to the court herself in her videotaped testimony. See *In re Jason*, 9 Conn. App. 98, 106, 516 A.2d 1352 (1986). M testified that the defendant had touched her private parts with his finger and his tongue, that the touches felt bad, and that she told the defendant "No." Also, the value of Cole's testimony would not have been lost had the statements not been admitted under the residual hearsay exception. Cole could still testify that M's mother came to him for counseling because of the allegations M made to her and DelSol that the defendant was sexually abusing her.[6] We conclude, therefore, that the necessity requirement of *Sharpe* was not met in this case, and, thus, it was improper for the trial court to admit these out-of-court statements under the residual hearsay exception.

Although we conclude that the trial court improperly admitted the out-of-court statements under the residual

[6] The state argued that the facts contained in M's mother's statements to Cole at the August 18, 1992 meeting would be lost forever because M's mother had aligned herself with the defense and because she had stated in interviews close to the time of trial that M had told her that "daddy *and the cat* hurt my bottom." (Emphasis added.) This claim was made before M's mother testified at trial. We do not believe that a party should be able to use the residual hearsay exception by speculating, or even by making an offer of proof, that a witness is going to lie or change his or her story on the stand. There are other appropriate methods to challenge the testimony and credibility of a witness once that witness has testified. These include cross-examination, the use of prior inconsistent statements, or calling rebuttal witnesses.

At trial, when M's mother was called as a defense witness, she testified that "[M] said daddy hurt my bottom and the cat hurt my bottom" and that "[M] always mentioned cat and daddy together." The state did challenge M's mother's testimony during cross-examination. It used the reports and statements of four witnesses to establish that M's mother never once mentioned that M had said that the cat had hurt her bottom. These traditional methods are preferred over admitting hearsay statements under the residual hearsay exception.

hearsay exception, our inquiry is not complete. "We must also determine whether the trial court's failure was harmless in light of the other evidence presented at trial. It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. *State* v. *Vitale*, 197 Conn. 396, 403, 497 A.2d 956 (1985). The question is whether the claimed erroneous action of the trial court is likely to have affected the result of the trial. *State* v. *Brown*, 199 Conn. 14, 25, 505 A.2d 690 (1986); *State* v. *Gonzales*, 196 Conn. 115, 119, 491 A.2d 1067 (1985). *State* v. *Torrice*, 20 Conn. App. 75, 91, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989). We further note that our inquiry focuses on the impact of the improperly introduced evidence on the jurors' perceptions and understanding of the other evidence presented in the case, rather than an analysis of the sufficiency of the remaining evidence to uphold the conviction in the absence . . . of the evidence . . . . See *Swenson* v. *Sawoska*, 215 Conn. 148, 152–53, 575 A.2d 206 (1990)." (Internal quotation marks omitted.) *State* v. *Merritt*, 36 Conn. App. 76, 92, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995).

Our review of the record reveals that the defendant has failed to sustain his burden of showing that the testimony was harmful in this case. "It is well established that if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." *Swenson* v. *Sawoska*, supra, 215 Conn. 155. In this case, these statements are merely cumulative of other evidence admitted at the trial. Furthermore, we cannot conclude that the jury's perceptions of the other evidence presented in this case, such as the testimony of M implicating the defendant, M's mother's testimony that M told

her that the defendant had sexually abused her, the evidence that, on two separate occasions, M told DelSol that the defendant sexually abused her, the evidence that M's mother went to see Cole for counseling regarding M's allegations of sexual abuse, Cole's written report, which was admitted at trial,[7] the corroboration of M's testimony by numerous constancy of accusation witnesses, and a confirming medical examination establishing that M had been abused, were so affected by the improperly admitted testimony, that it is likely that the result of the trial would have been different in the absence of the testimony. We conclude, therefore, that although the testimony was improperly admitted under the residual hearsay exception, its admission was harmless.

## V

In his final claim, the defendant contends that the trial court's jury instruction concerning consciousness of guilt was improper. The defendant properly preserved this claim by objecting to the charge on consciousness of guilt.[8]

---

[7] Cole's report was admitted at trial without objection. The report contained M's mother's hearsay statements. The defendant argues that, because the statements were admitted under the residual hearsay exception before the report was offered, any further objection to the report would have been futile. The defendant still has the duty at trial to object to evidence. We note that the state could have called Cole on rebuttal and offered the statements in the report as prior inconsistent statements of M's mother.

[8] "[Defense Counsel]: Then, Your Honor, on consciousness of guilt—and I know we discussed this one yesterday—where the court indicated diverting attention from himself to others, I think that was not the evidence . . . . [The defendant] indicated that he was just indicating people who had access to [M] rather than trying to divert attention of the police officers from himself to others.

"The Court: Well again, if that evidence is believed by you that's the qualifying factor within the charge, I think that's a fair charge. The court will overrule that objection.

"[Defense Counsel]: Exceptions to all those, Your Honor."

During an interview with police detectives, the defendant stated, "I think [M] is lying or maybe somebody else is doing it. Right now everybody is a suspect. Even my wife, my mother-in-law's day care, the babysitters that we took M to. Everybody's a suspect." These statements were admitted at trial. The trial court made a determination that it was sufficient for the jury to infer that from these statements the defendant had a consciousness of guilt, and it instructed the jury on how it could use this evidence.[9]

"In seeking to introduce evidence of a defendant's consciousness of guilt, '[i]t is relevant to show . . . *any* statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act.' . . . *State* v. *Burak*, 201 Conn. 517, 533, 518 A.2d 639 (1986), citing *State* v. *Reid*, 193 Conn. 646, 655, 480 A.2d 463 (1984). Once the evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence. It is then for the jury to consider any ambiguity in the evidence. *State* v. *Knighton*, 7 Conn. App. 223, 508 A.2d 772 (1986)." (Emphasis in original.) *State* v. *Adams*, 36 Conn. App. 473, 481, 651 A.2d 747 (1994), appeal dismissed, 235 Conn. 473, 667

---

[9] The trial court instructed the jury on consciousness of guilt as follows: "Whenever a person is on trial for a criminal offense it is proper to show that the person's conduct as well as any statements or declarations made by him subsequent to the alleged criminal offense which may fairly have been influenced by that fact, the manner in which the defendant conducted himself when asked by others in respect to the subject of this case may also be shown. If he should make attempts, make any statements in [an] attempt to divert the attention of the authorities from himself to others, if that evidence is believed by you, that may lead you to infer that the defendant was conscious of his guilt and that his statements were influenced by that consciousness. It is up to you as judges of the facts to decide whether certain acts, statements or conduct of the defendant reflects consciousness of guilt, and to consider such in your deliberation in conformity with the law I have given you."

A.2d 796 (1995) (certification improvidently granted). In this case, the trial court determined that the defendant's statements were sufficient to allow the jury to infer that they were influenced by the alleged criminal act; *State* v. *Aleksiewicz*, 20 Conn. App. 643, 653, 569 A.2d 567 (1990); and, therefore, "[i]t was proper to instruct the jury that if it found that the defendant intentionally made false statements concerning the crime that the jury could conclude that such statements showed a guilty connection with the crime." *State* v. *Adams*, supra, 482.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

LAVERY, J., concurring. I agree with the majority that the judgment of the trial court should be affirmed. I, however, believe that the constancy of accusation doctrine should be used with considerable caution, and that in this case it was abused by the state.

Here, the state introduced the statements of the accusing child witness through the testimony of six constancy witnesses. This type of constancy of accusation evidence is both cumulative and can easily prejudice the defendant.

Our Supreme Court recently examined the constancy of accusation doctrine in *State* v. *Troupe*, 237 Conn. 284, 303, 677 A.2d 917 (1996), and narrowed the existing doctrine to include only "testimony regarding the fact of the complaint." In *Troupe*, the court stated: "[A] defendant has an interest in not being unreasonably burdened by such accrediting or supporting evidence, which . . . generally is not admissible in the trial of crimes other than sexual assault. Concerns about such evidence are magnified if the victim has reported the

alleged offense to a number of persons, all of whom are permitted to testify about the details of the complaint. In such circumstances, there is an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony. Indeed, one commentator has opined that testimony by multiple witnesses about the facts of the victim's complaint may so unfairly bolster the victim's credibility that, in such cases, 'cross-examination of the victim is not a sufficient protection from prejudice.' C. Tait & J. LaPlante, Connecticut Evidence (Sup. 1995) § 11.22.1, p. 196." Id., 302–303.

In the present case, the victim testified three separate times, including twice on videotape under the constancy of accusation doctrine, concerning the sexual assault. Furthermore, the two videotaped interviews of the victim child witness were done by the state's attorney in preparing the victim for trial two years after the initial allegations were made.

"Long standing precedent set by our Supreme Court demands that the following criteria be met before a witness can testify under what has consistently been labeled the constancy of accusation exception to the hearsay rule: (1) the court must balance the probative force of the testimony against its prejudicial effect; (2) the crime charged must be sex related; (3) the witness must be one to whom the victim complained about the offense; (4) the accusation must have been made at a time when it was natural for the victim to have made it; and (5) the victim must first testify, in court, as to the facts of the alleged occurrence." *State* v. *Bethea*, 24 Conn. App. 13, 17, 585 A.2d 1235 (1991), cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991). Here, the two videotaped interviews of the victim were not made at a time when it was natural for the victim to have made them, but were staged by the state two years after the

victim's original allegations. This type of evidence is an abuse of the constancy of accusation doctrine.

Nevertheless, given the strength of the state's case, I concur with the majority in affirming the judgment of the trial court.