STATE OF CONNECTICUT *v.* JUAN MORALES
(AC 14765)

Foti, Lavery and Schaller, Js.

Argued January 13—officially released May 13, 1997

*Pamela S. Nagy*, special assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James Thomas*, state's attorney, and *John M. Massameno*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Stat-

utes (Rev. to 1991) § 53a-70 (a) (2),[1] two counts of risk of injury to a child in violation of General Statutes § 53-21,[2] and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[3] The defendant claims that the trial court improperly (1) violated his right to confrontation by limiting cross-examination, (2) admitted as evidence a videotape of the complainant, (3) instructed the jury on a missing witness, and (4) allowed an ex post facto violation for the conviction of sexual assault in the first degree. He also claims that his due process rights were violated by prosecutorial misconduct. We reverse the judgment of the trial court in part.

The jury could reasonably have found the following facts. In the fall of 1988, D and her sister were enrolled in Maria Morales' home day care. The defendant, who is Maria's husband, lived there with their son and two daughters. The day care business was in Maria's name and others in the family, including her daughters, her niece and the defendant, helped her.

The children for whom care was provided were often in the living room and television area; the adjoining rooms were the dining room and kitchen. A hallway connected that area to a bathroom and three bedrooms.

[1] General Statutes (Rev. to 1991) § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, or the health of such child is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined no more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

When D's mother dropped her off at about 9 a.m., the defendant was occasionally there. When D was picked up between 5:30 p.m. and 5:45 p.m., the defendant was usually there. At first, D seemed to like the defendant and was comfortable with him, running to him and often sitting on his lap. D sometimes described things to her mother that she had seen in one of the Morales' bedrooms, and several times when D wanted to take her mother to one of the rooms to see toys Maria did not object.

Between the fall of 1989 and June, 1990, when D was three and one-half to four years old, she was watching television at day care when the defendant told her to come into his bedroom. Once inside, the defendant closed the door, pulled down D's pants and touched her vaginal area and anus with his hands and finger. The defendant's finger also penetrated D's vagina, which was painful for D. The defendant told her not to tell anyone. The defendant also pulled his own pants down and showed her his penis. He then told her to touch his penis, which she later described as pointing up. Although D did not want to do so, she complied, and the defendant again told her not to tell anyone. D put her clothes back on and left the room. She told one of the defendant's daughters some of what had happened, and the daughter told her to keep away from the bedroom.

During that time and the period that followed, D's mother began to notice behavioral changes in D. For several weeks in the fall of 1989, D would cry and say she did not want to go to day care, but her mother thought it was just a phase. During that period, D complained that her vaginal area hurt, and her mother noticed some irritation there but thought D was simply not wiping herself properly. D's mother cleaned the area and put ointment on it. Additionally, D would put her hands in her pants and touch her vaginal area and

wanted running water on that area when she bathed. Thereafter, D got up at night crying with nightmares and was afraid to go to her bed. D also became curious about her father's body. Although D was supposed to knock before opening a closed door, she would try to come into the room when her father was dressing or using the bathroom. During this time, D's demeanor was less spontaneous, independent and lively. She also was distancing herself from the defendant.

In June, 1990, D's mother, still unaware of the abuse, withdrew D and her sister from the Morales' day care. Thereafter, D was enrolled in a school where children learned personal safety and privacy, including "good" and "bad" touches. In early 1991, while D's mother was driving D home, D said she wanted to tell her something. She said it was a secret and her mother must promise not to tell anyone. After D's mother promised, D told her that the defendant, "Juan," touched her in her private area and that it "hurted," and that he also made her touch his private area. D gave more details, saying that it had occurred in the defendant's bedroom, that the defendant had pulled her pants down, touched her private area and that it hurt. She indicated that it had happened twice. She also said that she had cried, but no one could hear her because the door was closed and Maria was in another room. When her mother asked whether D had told anyone else, D repeated that the defendant had told her not to tell anyone.

After D's mother reported what D had told her to the department of children and youth services, now known as the department of children and families, D was interviewed by Veronica Lugris, a social worker for the department. D seemed to know the difference between truth and lies and good and bad touches. Although she seemed happy when the interview began, when the subject of abuse arose, D had difficulty maintaining eye contact and was nervous and shy. Lugris interviewed

D in a nonleading fashion as to the complaint, and D corroborated her earlier version of events. Lugris showed D anatomical drawings and D selected one of the preschool girl and another of an adult white male, circling where the touching had occurred.

On May 13, 1991, Frederick Berrien, a pediatrician specializing in child abuse, examined D. He set up a videotape, but covered the camera during the exam itself, so that only the audio was recorded. D appeared comfortable with questions about Maria Morales, but became extremely anxious and uncomfortable when asked about the defendant and possible abuse. D got up, moved away, began climbing a wall in the room, denied that the defendant had hurt her, repeated several times "nothing bad happened," and changed the subject. Although the child had removed her clothes for doctors before, she got upset at having to disrobe and wear a gown.

D's labia minora and majora were normal, but the hymenal opening was at least twice the normal size, at ten millimeters width, and the hymen was one to two millimeters thick, less than the usual thickness of five millimeters. These findings are consistent with penetration by a blunt object such as an adult finger. It was extremely unlikely the penetration was self-inflicted, as the area is very sensitive and doing so would be quite painful.

On October 26, 1994, Berrien examined D with a colposcope, an instrument with a camera, light and magnification capabilities. The hymenal opening had decreased to seven millimeters, which was consistent with healing. He was unable to determine the hymenal depth. He observed some thickening and a bump or mound, rather than a normal, smooth surface. He had not seen this in the first exam. While thickening and mounds can be normal, they are also found in abused

children due to the scarring from trauma. The location of these features, near the bottom of the hymen, was also consistent with abuse.

In July, 1991, social worker Michaele Kelly met with D to address her emotional and behavioral problems. Initially, D did not look at Kelly, was not trusting and was excessively dependent on her parents, all atypical behavior for a child of D's age, yet common for a child who has suffered abuse. In the first session, when asked whether anyone had ever touched her and made her feel uncomfortable, D first said no. When Kelly said this was a safe place and that D could trust her, D corroborated the abuse and named the defendant, although she acted uncomfortable and ashamed. The reporting did not appear rehearsed. D used appropriate language, but she spoke in a reluctant fashion, which is not unusual.

Although D initially reported one incident, Kelly believed abuse occurred more than once. D thereafter reported two incidents. Kelly saw D weekly for about four months in 1991. As the sessions progressed, D became more open, trusting and confident. At the end of those sessions, Kelly again asked D about the incident, and D gave the same information, with additional detail. Kelly resumed sessions with D in October, 1993, because D was acting out sexually, regressing and becoming asocial. During the additional therapy, D repeated her allegations regarding the defendant's abuse.

I

The defendant claims that his right to confrontation, pursuant to the sixth amendment to the United States constitution, and article first, § 8, of the Connecticut constitution, was violated when the trial court disallowed questions about the victim's other allegation of abuse and the sleeping arrangements in her home.

## A

The following facts are relevant to this claim. The trial court, prior to trial, ordered disclosure of a portion of the record prepared by Lugris, in which a reference was made that D had claimed that the defendant's son had molested her during the same time frame. At trial, when asked during cross-examination, D could not remember what she talked to Kelly about, including whether she ever spoke about the defendant's son. When D was asked if she had discussed the son with Berrien, the state objected and, in the absence of the jury, referred to a motion in limine that the court had granted that required the defendant to make an offer of proof prior to presenting evidence intending to show third party culpability. The state also argued that any questions about the defendant's son regarding an alleged reference by D to sexual molestation fell within the rape shield statute requiring a preliminary ruling by the court.[4]

The defendant argued that he was not claiming third party culpability as to his son but rather, that D's ability to recall any incident with his son would be pertinent to veracity and also to show the extent of the investigation conducted by the department of children and families. The defendant also claimed that the rape shield statute

[4] General Statutes § 54-86f, the rape shield statute, provides in pertinent part: "In any prosecution for sexual assault . . . no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct . . . or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera . . . . If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. . . ."

was inapplicable. The defendant indicated that he would call his son as a witness to testify that he had not molested D. The defendant also indicated that he intended to inquire of D's mother, along with Lugris and Berrien, if they were present when D made an allegation as to the defendant's son, in order to impeach D's credibility and ability to recall.

The court sustained the state's objections. The court found that there was no evidence that D was confused about her allegations of abuse and that full cross-examination was available to test D's credibility. Because D could not recall any allegation against the defendant's son, other witnesses could not be used to impeach D on this point.

The defendant argues that his questions on cross-examination of D about her statement regarding his son are not barred by the rape shield statute because they were in fact false allegations of sexual abuse and not actual sexual conduct. He claims that, if the rape shield statute does apply, he was entitled to question in this regard under its subsection that allows evidence that is "otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights." General Statutes § 54-86f (4). It is, however, the defendant's burden to establish even the inference that the victim's prior allegation of sexual abuse was false. *State* v. *Barrett*, 43 Conn. App. 667, 674, 685 A.2d 677 (1996). Meeting that burden is necessary to show the relevance of the allegation to the complainant's credibility. *State* v. *Slater*, 23 Conn. App. 221, 225, 579 A.2d 591 (1990). The failure of the defendant to establish the falsity of the prior allegation may cause that evidence to be excluded as irrelevant. See id.

Our review of the record discloses that the defendant failed to sustain such a burden. The defendant's claim

of falsity is not evidence, nor can such be established by the defendant's attempt to have his son testify that the allegation, if made, was false. See *State* v. *Barrett*, supra, 43 Conn. App. 674 n.7. A poor or flawed memory by D in making an accusation is not sufficient to supply evidence of falsity. We conclude, therefore, that the trial court did not violate the defendant's right to confrontation by excluding evidence as to a possible prior allegation of sexual abuse by another. After reviewing the record, we also conclude that the defendant was afforded wide latitude in his cross-examination of D relative to her credibility, and of other witnesses[5] for purposes of questioning D's testimonial capacity. The defendant's claim that D could not properly recollect her accusation against his son and that this affected her credibility is unavailing because the trial court specifically found that D was not confused at all about the events or identity of the perpetrator. See *State* v. *Kulmac*, 230 Conn. 43, 55, 644 A.2d 887 (1994).

B

The defendant also claims that his right of confrontation was violated because he was precluded from inquiring into the sleeping arrangements in D's home.

The state called D's mother in rebuttal to refute another witness' testimony. When the defendant asked D's mother on cross-examination how many bedrooms were in her house, the state objected as to relevance. The defendant claimed that experts on sexual abuse stress the importance of investigation of prior abuse and family attitudes about sex and modesty, so that where the victim slept and with whom she slept were

---

[5] The defendant alleges, as part of his broad claim, that the trial court improperly prohibited him from cross-examining D's mother, Berrien and Lugris about his son. He claims that the "issue also went to each constancy of accusation witness's credibility; why did they accept one allegation and not the other?"

relevant, and that the presence of teenage brothers posed "modesty issues." The state argued that the requirements of outside investigations were irrelevant, that the question was outside the scope of direct examination and that it did not meet the requirements for third party culpability. The defendant reiterated that the issue was pertinent regarding expert investigation of abuse, and that D's mother had spoken about the level of modesty in the home. The state replied that D's mother was not an expert. The court ruled that the defendant could explore any and all subjects actually raised on direct examination but that, because the state had not raised the issue of sleeping arrangements, the defendant could not either. The defendant did not seek to cross-examine D's mother again regarding sleeping arrangements, nor did he call her as his own witness to inquire directly on that subject.

The right of a defendant to cross-examine a prosecution witness is not absolute. *State* v. *Stevenson*, 43 Conn. App. 680, 695, 686 A.2d 500 (1996). It is well settled that the scope of cross-examination is limited to matters covered in the direct examination, except as they involve credibility. *State* v. *Ireland*, 218 Conn. 447, 452, 590 A.2d 106 (1991). "The court has wide discretion to determine the scope of cross-examination." *State* v. *Hernandez*, 224 Conn. 196, 208, 618 A.2d 494 (1992). A question is within the scope of the direct examination if it is intended to "rebut, impeach, modify or explain any of the [witness'] direct testimony . . . ." *State* v. *Zdanis*, 173 Conn. 189, 196, 377 A.2d 275 (1977).

From the record before us, it is apparent that the trial court properly restricted cross-examination from exceeding the scope of evidence presented by the state on direct examination. Following the witness' testimony on rebuttal, the defendant, on cross-examination, did not seek to inquire about sleeping arrangements, nor did he call D's mother as his own witness and seek

that information directly. We conclude that the trial court did not abuse its discretion in restricting improper cross-examination.

## II

The defendant next claims that the trial court improperly admitted into evidence a videotaped interview of the victim under the constancy of accusation doctrine. He claims that, although he did not object to the admission of the evidence, he nevertheless preserved his claim by "objecting to constancy testimony." He claims that the videotaped interview, taken one year after the event, along with the testimony of several witnesses under the constancy of accusation doctrine, deprived him of a fair trial and violated his rights of equal protection and confrontation. He concedes that he did not object to the testimony of Lugris or to the offer of the videotape, but he claims that previous objections to constancy of accusation testimony were overruled and further objection would have been futile.[6] In the event that we conclude that the claim was not properly preserved, the defendant seeks review under the plain error doctrine pursuant to Practice Book § 4061 or under the *Evans-Golding* doctrine.[7]

Over the defendant's objection, constancy of accusation testimony was given by witnesses Lugris, Kelly and Berrien. Pursuant to policy of the department of children and families, Lugris videotaped an interview with D on March 25, 1992. Because that tape was defective, she videotaped D again on April 15, 1992. The tape of that interview was admitted without objection. During the trial court's final instructions, the court

[6] The defendant states that the trial court noted in overruling a prior objection to constancy of accusation testimony that it was not ready to "overrule the Supreme Court."

[7] *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973).

charged on the law concerning constancy of accusation. The defendant noted no objection.

The defendant did not properly preserve this claim at trial. Practice Book § 288.[8] He asks that we abandon the use of the doctrine of constancy of accusation because such testimony is inherently unreliable, and the doctrine is based on outmoded and gender biased notions. We are bound by Supreme Court precedents. Our Supreme Court has indicated that constancy testimony does not violate a defendant's right to confrontation; *State* v. *Angell*, 237 Conn. 321, 325, 677 A.2d 912 (1996); *State* v. *Troupe*, 237 Conn. 284, 291–93, 677 A.2d 917 (1996);[9] nor does it violate equal protection as being gender based. *State* v. *Kelley*, 229 Conn. 557, 565, 643 A.2d 854 (1994). The defendant raised no objection, constitutional or otherwise, at trial. We will not review this claim because it is not of constitutional magnitude alleging a violation of a fundamental right. *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[10]

The defendant also seeks plain error review, alleging that the erroneous admission of this allegedly staged

[8] Practice Book § 288 provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as counsel desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point."

[9] *Troupe* imposed new limitations regarding the doctrine that "apply only to cases in which constancy of accusation testimony has not yet been admitted into evidence on the date of the publication of this opinion. . . . [O]ur decision to modify the constancy of accusation doctrine is based solely on policy considerations and not on constitutional grounds. . . . Thus, we see no reason to order a new trial in this or any other case in which testimony had been properly permitted under our former version on the constancy of accusation doctrine." *State* v. *Troupe*, supra, 237 Conn. 305–306.

[10] In addition to a violation of his federal rights to equal protection and to confrontation, the defendant also alleges a violation of his rights under article first, § 8, of the Connecticut constitution. Because he offers no separate analysis of this claim under the state constitution, we will not review it. *State* v. *Williams*, 231 Conn. 235, 245 n.13, 645 A.2d 999 (1994).

constancy evidence was so obvious as to affect the fairness and integrity of public confidence in the judicial proceedings. The defendant argues that the state staged the interview with D over one year after her initial complaint for the sole purpose of having D repeat her allegations and playing the tape at trial. The defendant further argues that the tape was not made under ordinary, reliable or natural circumstances.

We have recently rejected claims that a videotaped interview taken two years after an initial allegation was taken at a time unnatural for the victim to disclose the abuse; *State* v. *Marshall*, 45 Conn. App. 66, 73–75, 694 A.2d 816 (1997); and should not have been admitted at trial as constancy of accusation evidence because it was prepared for use by the prosecution. Id. The timing and the naturalness of the interview are matters for the jury to weigh. *State* v. *Parris*, 219 Conn. 283, 292, 592 A.2d 943 (1991).

In this case, as in *Marshall*, the defendant was not deprived of the opportunity to examine the videotaped interview before trial and before D's testimony. He had the opportunity to cross-examine D regarding any claimed inconsistencies and to cross-examine Lugris about the circumstances under which the child's statements were recorded. See *State* v. *Marshall*, supra, 45 Conn. App. 74–75; see also *State* v. *DePastino*, 228 Conn. 552, 568–69, 638 A.2d 578 (1994). We conclude, therefore, that the videotaped interview of D was properly admitted into evidence.

### III

The defendant next claims that the trial court improperly instructed the jury on a missing witness and that we should abolish the *Secondino* instruction[11] because

---

[11] *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960).

it violates a defendant's right to due process to present a defense and to a fair trial.[12]

The underlying facts are as follows. One of the defendant's daughters testified as to her work at the day care, her mother's policies regarding supervision of the children and the hours that the defendant was usually present at the day care. The defendant did not call his wife to testify. Evidence was admitted that Maria Morales was served with a state's subpoena at the defendant's address. The trial court gave a *Secondino* instruction to which the defendant did not object.

We will not review this claim. "In order for such a rule to have any efficacy, objections by a party opposing such an instruction should be made at the time the advance ruling is sought. A party who fails to make a timely objection to the giving of a *Secondino* charge will be deemed to have waived the issue for appeal. The giving of a *Secondino* charge is purely an evidentiary issue and is not a matter of constitutional dimensions." *State* v. *Anderson*, 212 Conn. 31, 41–42, 561 A.2d 897 (1989).

The defendant did not properly preserve this claim at trial. He has requested that we review it under *Golding*. We conclude that the defendant cannot satisfy the second prong of *Golding* because he has failed to demonstrate that his claim alleges a violation of a fundamental constitutional right.

"[O]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." *State* v. *Golding*, supra, 213 Conn. 241. Because we conclude that the defendant has not presented a constitutional claim, we will not review the

---

[12] The defendant has withdrawn an additional claim that the *Secondino* inference directly conflicts with the operation of the marital privilege.

issue of whether the missing witness charge was warranted.

The defendant also alleges that the missing witness doctrine is unconstitutional because it forces him to present evidence to rebut the inference, thereby shifting the burden of proof to him. His argument must fail. *State* v. *Annunziato*, 169 Conn. 517, 536–39, 363 A.2d 1011 (1975) (ruling that *Secondino* charge in no way violates defendant's constitutional rights); see also *State* v. *Peary*, 176 Conn. 170, 182, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979); *State* v. *Lucci*, 25 Conn. App. 334, 344–45, 595 A.2d 361, cert. denied, 220 Conn. 913, 597 A.2d 336 (1991); *State* v. *Hudson*, 14 Conn. App. 464, 471, 541 A.2d 534, cert. denied, 209 Conn. 803, 548 A.2d 439 (1988).

The defendant's claim also does not merit review under the plain error doctrine of Practice Book § 4061. When a trial court's actions do not result in any manifest injustice, a defendant's claim of plain error does not warrant review. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Webb*, 37 Conn. App. 722, 730–31, 657 A.2d 711, cert. denied, 234 Conn. 915, 660 A.2d 357 (1995). We conclude that the trial court's instruction on the missing witness did not result in manifest injustice and accordingly does not warrant review.

IV

The defendant claims that the state committed prosecutorial misconduct throughout the trial in such an egregious pattern that it deprived him of his due process rights and his right to a fair trial. He alleges this misconduct took place during the examination of witnesses and closing arguments. He claims that he is entitled to

review by this court because he objected to inappropriate questions and because he requested a mistrial after one such question. The defendant, however, never claimed misconduct at trial, and did not object to the state's summation. Nor did the defendant seek curative measures from the court. He, therefore, seeks review under *Golding.*

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. 'The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct.' *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984)." *State* v. *Floyd,* 10 Conn. App. 361, 364, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126 (1987).

"We will not afford *Golding* review to claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." *State* v. *Young,* 29 Conn. App. 754, 766, 618 A.2d 65 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993). We review the comments and actions complained of in the context of the entire trial. *State* v. *Robinson,* 227 Conn. 711, 746, 631 A.2d 288 (1993).

The defendant claims that the misconduct took place during the state's cross-examination of him on the use of alcohol and its effect on his judgment, and on whether he considered striking his wife to be a minor thing. The defendant's objections were overruled to all questions in issue. The defendant also alleges that the state committed misconduct during closing arguments by commenting on the defendant's testimony on the use of

alcohol, by improperly invoking the sympathy of the jury for D, by improperly commenting on facts not in evidence, and by arguing about the defendant's motive and the credibility of D and other witnesses.

After a painstaking review of the record, we conclude that the defendant has not shown a pattern of repeated and blatant misconduct so egregious that it overrode the trial court's instructions so as to deny him a fair trial.[13]

V

On appeal, the defendant claims that his conviction of sexual assault in the first degree constituted an ex post facto violation, in that he was punished for a class B felony for acts that may have been a class C felony when allegedly committed. He also claims that the state failed to prove an essential element of the crime, that it occurred after October 1, 1989, and, consequently, there was insufficient evidence. Because the defendant failed to raise this claim at the trial level, he seeks plain error or *Golding* review. When the record supports the allegation that the state has not proved every element of the crime with which a defendant has been charged, *Golding* review is warranted. See *State* v. *Aleksiewicz*, 20 Conn. App. 643, 645 n.1, 569 A.2d 567 (1990).

The defendant was charged with a violation of General Statutes § 53a-70 (a) (2), sexual assault in first degree, "at some unknown time between the fall, 1989, and June, 1990 . . . ." Subsection (2) became effective October 1, 1989. Prior to that time, the only statute prohibiting similar conduct was sexual assault in the

---

[13] We find it unnecessary to discuss the alleged acts of misconduct. As we have recently commented, a prosecutor may present a strong and cogent argument, but must refrain from trying to arouse prejudice in the jurors, or from diverting their attention from their duty to base their conclusions on the evidence actually presented at trial. *State* v. *Stevenson*, 43 Conn. App. 680, 697, 686 A.2d 500 (1996).

second degree, General Statutes § 53a-71, which proscribed intercourse with a person under the age of sixteen. If committed on or after October 1, 1989, the act of intercourse with an underage minor is punishable as a class B felony, but if it was committed prior to that date, it would be punishable as a class C felony.

The trial court instructed, as requested by the state and without objection by the defendant, that the date and time of the offenses were not elements of the crime and that the jury need not make these factual findings. Following his conviction before the trial court, the defendant was sentenced to a period of incarceration of fifteen years on the count of sexual assault in the first degree, execution suspended after seven years, followed by five years of probation. The terms of sentencing on the other counts ran concurrently.

The issue is controlled by *State* v. *Owen*, 40 Conn. App. 132, 141–46, 669 A.2d 606, cert. denied, 236 Conn. 912, 673 A.2d 114, cert. denied, 237 Conn. 922, 676 A.2d 1376 (1996). The state argues that "[b]ecause the instant claim was never raised at trial and does not concern sufficiency but [rather] whether an ex post facto violation occurred, *Owen* does not control." Here, the defendant has raised a sufficiency claim.

In determining whether there was sufficient evidence for the jury to find that the act or acts took place after October 1, 1989, we review the evidence in the light most favorable to sustaining the verdict. *State* v. *Williams*, 231 Conn. 235, 251, 645 A.2d 999 (1994). The defendant does not contest the issue of sufficiency of the evidence insofar as it refers to whether the act or acts took place, but only, as in *Owen*, "whether the testimony supports the jury's conclusion that the defendant committed that act [or those acts] on or after October 1, 1989." *State* v. *Owen*, supra, 40 Conn. App.

143. Further, the jury could not use the constancy of accusation testimony for that purpose. See id., 145.

The state also argues that we should distinguish *Owen* from the present case because here, unlike in *Owen*, the court never instructed on the issue as part of jury instructions. This argument, however, would weaken, not strengthen, the state's position. Regardless of whether instructions were given, the issue still remains one of sufficiency, i.e., whether the evidence was sufficient for the jury to "have reasonably concluded beyond a reasonable doubt that the act [or acts] occurred on or after October 1, 1989." Id., 145–46.

The state also points out that the time period between the fall of 1989 and June, 1990, amounts to 282 days (assuming a fall equinox of September 22, 1989), only nine days of which (fewer than one in thirty) fell before October 1, 1989. This, the state argues, leads to the conclusion that the probability that abuse occurred during the days before October 1, 1989, is quite small. Probability, however, is not sufficient under the circumstances that we have before us. The state is not required "to limit the date in the information more narrowly than the evidence available warrants, even if the defendant attempts to assert an alibi defense." *State* v. *Bergin*, 214 Conn. 657, 675, 574 A.2d 164 (1990); see also *State* v. *Blasius*, 211 Conn. 455, 461, 559 A.2d 1116 (1989); *State* v. *Laracuente*, 205 Conn. 515, 519, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988). Although the rule in this state is that it is not essential in a criminal prosecution that the crime be proven to have been committed on the precise date alleged; *State* v. *Lorusso*, 151 Conn. 189, 191, 195 A.2d 429 (1963); and that time is not usually an essential element of an offense; *State* v. *Ramos*, 176 Conn. 275, 276–77, 407 A.2d 952 (1978); where the defendant is subjected to having a greater sentence imposed because of the date, actual prejudice occurs.

We, therefore, are not dealing with an improper charge on an essential element of the crime here. The jury need not, as an essential element of the crime, find that the act or acts occurred on a specific day. It is sufficient if they find that they occurred some time between the beginning of fall, 1989 and June, 1990. As in *Owen*, our review of the record leads us to conclude that the evidence does not support a conclusion that the jury could reasonably have concluded beyond a reasonable doubt that the act or acts occurred after October 1, 1989. The defendant could not, therefore, have been found guilty of violating § 53a-70 (a) (2), sexual assault in the first degree. The evidence was, however, sufficient for a conviction of sexual assault in the second degree in violation of § 53a-71 as a lesser included offense. It is clear that the jury concluded that sufficient evidence was presented to justify a finding beyond a reasonable doubt that the defendant had committed the act or acts constituting the crime of sexual assault on the child D during the period of time as charged. Sexual assault in the second degree, under the facts and circumstances of this case, is necessarily a lesser offense of sexual assault in the first degree.

The judgment is reversed only as to the charge of sexual assault in the first degree, General Statutes § 53a-70 (a) (2), and the case is remanded with direction to render a judgment of not guilty on that charge and guilty of sexual assault in the second degree in violation of General Statutes § 53a-71, and to resentence the defendant in accordance therewith.

In this opinion the other judges concurred.